## Texas Pacific Coal & Oil Company v. Mrs. Suda Barker et al.

ET AL.

No. 4031.   Decided May 23, 1928.
(6 S. W., 2d Series, 1031.)

*John Hancock, C. C. Wightman* and *W. B. Powell,* for plaintiff in error.

The trial court erred in overruling appellant's special exception "D" to appellees' petition, wherein it is urged that said petition fails to allege (a) that oil and gas has been drained from said premises, (b) the amount of said drainage, and (c) the value of the oil and gas drained. Steele v. American Development Co. (W. Va.), 92 S. E., 410; Daughetee v. Ohio Oil Co. (Ill.), 105 N. E., 308; Hall v. South Penn Oil Co. (W. Va.), 76 S. E., 124; Grass v. Dev. Co. (W. Va.), 84 S. E., 750.

The honorable Court of Civil Appeals erred in holding that an issue of fact is raised, as to the amount of drainage of oil and gas, by proving the dates of the completion of wells on adjacent property and their initial production, without showing whether or not they continued to produce and for how long and the total production obtained therefrom. Without knowing the total production obtained from the wells complained of, it would be impossible to determine the amount thereof drained from the adjacent property. Steele v. American Development Co. (W. Va.), 92 S. E., 410; Becker v. Submarine Oil Co. (Cal.), 204 Pac., 245; Brown v. Producers Co. (La.), 64 So., 675; Ohio Fuel Co. v. Shilling (Ohio), 127 N. E., 873; Klepper v. Lemon (Pa.), 48 Atl., 483; Blair v. Clear Creek

Oil Co. (Ark.), 230 S. W., 286; Hall v. South Penn Oil Co. (W. Va.), 76 S. E., 124; Grass v. Dev. Co. (W. Va.), 84 S. E., 750.

The honorable Court of Civil Appeals erred in holding that an issue of fact had been raised authorizing the submission to the jury as to whether or not appellant had given "due protection" to the land in controversy by drilling wells thereon to properly offset wells on adjacent tracts of land. Same authorities.

The honorable Court of Civil Appeals erred in its opinion in holding that an issue of fact was raised as to whether or not Gates Oil Company's wells numbered one and two, and Tex Rickard Oil Company's wells numbered one, two and three are "near enough" to appellees' premises to require appellant to drill offset wells thereto. The testimony fails to show the production of said wells, other than their initial production. There is no testimony in the record showing that any oil or gas was produced from any of said wells subsequent to March 12, 1920, the date of the delivery of the merger contract sued upon. Same authorities.

The honorable Court of Civil Appeals erred in holding that an issue of fact was raised authorizing the submission as to whether or not Tex Rickard Oil Company's wells numbered one, two and three, and Gates Oil Company's well numbered one, on the Barker heirs' tract, were and are such producers of gas or oil in "such quantities" as would require appellant to offset the same by drilling offset wells on appellees' premises in order to properly protect the same from drainage of oil or gas. No proof whatever was offered showing the amount of the production of any of said wells on or subsequent to March 12, 1920, the date the merger contract sued upon was delivered; the only evidence pertaining to the production of any of said wells being the amount at which they "came in," which was long prior to March 12, 1920. Aycock v. Paraffine Co., 210 S. W., 851.

The trial court erred in refusing to submit to the jury special instruction requested by appellant that "due protection," as used in said question, means the drilling of offset wells by appellant at such a time and place as that it would appear to an ordinarily prudent and diligent operator, under all of the facts and circumstances before the jury, that a production would be obtained therefrom sufficient in quantity to amount in value to the cost of drilling, equipping and operating said wells, and a reasonable profit on the amount so expended. Guffey Pet. Co. v. Chaison, 107 S. W., 609; Aycock v.

Paraffine Oil Co., 210 S. W., 851; Steele v. Amer. Dev. Co., 92 S. E., 410; 'Eastern Oil Co. v. Beatty, 177 Pac., 801; Brewster v. Lanyon Zinc Co., 140 Fed., 801; Colgan v. Forest Oil Co., 45 Atl., 119.

The honorable Court of Civil Appeals erred in holding that the merger contract sued upon, which provides that appellant "will give due protection to said merged tracts of land against all offset wells drilled on adjacent property near enough to require an offset on these merged tracts," required the drilling of offset wells to wells theretofore drilled and producing on adjacent property.

The honorable Court of Civil Appeals erred in holding that under the merger contract delivered March 12, 1920, appellant was not the sole judge, when acting in good faith, as to the amount of development that should be done on the premises in controversy; and that under said contract additional drilling was required as a matter of law. T. P. C. & O. Co. v. Bruce, 233 S. W., 535; Colgan v. Forest Oil Co., 45 Atl., 119; Jennings v. Southern Carbon Co., 80 S. E., 368; 94 S. E., 363; Manhattan Oil Co. v. Correll, 73 N. E., 1084.

The honorable Court of Civil Appeals erred in holding that the trial court did not err in refusing to give to the jury appellant's special charge wherein the jury was instructed that appellant was only required to further develop the land involved herein, if it would have appeared to an ordinarily prudent and diligent operator, from all of the facts in evidence, that it would have obtained a production thereby sufficient in quantity to amount in value to the cost of drilling, equipping and operating said wells and a reasonable profit in addition thereto on the amount so expended. Same authorities. Also, Brewster v. Zinc Co., 140 Fed., 811; Grass v. Development Co., 84 S. E., 750.

No proof, whatever, was made as to the number of wells that would have been drilled on said premises had appellant dedicated a string of tools to the development thereof, as required under the contract sued upon, nor the total probable production that would have been obtained therefrom. Without knowing the number of wells that would have been drilled had a string of tools been dedicated to the development of said property, the jury could not determine the probable production. Grass v. Dev. Co., 82 S. E., 750; Barquin v. Hall Oil Co., 201 Pac., 352; Steele v. Amer. Dev. Co., 92 S. E., 410; Hall v. South Penn Oil Co., 76 S. E., 124; Ammons v. South Penn Oil Co., 35 S. E., 1004.

The trial court erred in refusing to submit to the jury appellant's special charge whereby the jury was instructed that the measure of damages, if any, to appellee for the failure to properly develop said premises is the amount of interest at the rate of six (6%) per cent per annum on the value of the royalty contracted in the production that would have been obtained had said land been properly developed. Grass v. Development Co., 84 S. E., 750; Daughetee v. Ohio Oil Co. (Ill.), 105 N. E., 308, L. R. A., 1917 E; Bradford v. Blair (Pa.), 4 Atl., 218.

*W. H. Francis, A. S. Hardwicke, Robert A. Johns* and *H. S. Garrett,* on behalf of clients similarly interested, presented arguments in support of the position of plaintiff in error.

*Burkett, Orr & McCarty,* for appellees, cited and discussed: Ara v. Ruthland, 172 S. W., 993; Bexar County v. Terrell, 14 S. W., 62; Blagen v. Thompson (Oregon), 31 Pac., 647; Blair v. Clear Creek Oil & Gas Co., 148 Ark., 301, 230 S. W., 286, 19 A. L. R., 430; Boal v. Citizens' Natural Gas Co., 23 Pa. Super. Ct., 339; Brewster v. Lanyon Zinc Co., 140 Fed., 801; Campbell v. Peacock, 176 S. W., 774; Canyon Power Co. v. Gober, 192 S. W., 802; Chamberlayne on Modern Evidence, Vol. 3, Secs. 2331-2332; City of San Antonio v. Pizzini, 58 S. W., 636; Colgan v. Forest, 194 Pa., 234, 45 Atl., 119, 75 Am. State Reports, 695; Corpus Juris, Vol. 13, p. 306, Sec. 128; Corpus Juris, Vol. 22, p. 994, Sec. 1249; Crum v. Thomason, 181 S. W., 803; Daughetee v. Ohio Oil Company, 263 Ill., 518, 105 N. E., 308; Daughetee v. Ohio Oil Co., 151 Ill. App., 102; Doan v. Osborne, 33 S. W., 156; Fraser v. Echo M. & S. Co., 9 T. C. A., 210, 28 S. W., 714; George v. Vaughan, 55 Texas, 131; Grass v. Big Creek Dev. Co., 84 S. E., 750; Hall v. South Penn Oil Co., 76 S. E., 124; Hetzel v. Baltimore & O. R. Co., 169 U. S., 26, 42 L. Ed., 648; Hoggland v. Cothren, 25 Texas, 345; Indianapolis, B. & W. Ry. Co. v. Birney, 71 Ill., 391; International & G. N. Ry. Co. v. Culpepper, 46 S. W., 922; International & G. N. Ry. Co. v. Glover, 84 S. W., 604; Landrum v. Turney, 239 S. W., 366; Knapp v. Smith, 27 N. Y., 277; McClay v. Western Pa. Gas Co., 201 Pa., 197, 50 Atl., 978; Morrison-De Soto on Oil and Gas Rights, p. 209; Nicolay v. Unger, 80 N. Y., 54; Pecos & N. T. Ry. Co. v. Coffman, 160 S. W., 145; Pfeiffer v. Wilke, 107 S. W., 361; Railway v. Granger, 85 Texas, 574, 22 S. W., 959; Ruling Case Law, Vol. 18, p. 1219; St. L., I. M. & S. Ry. Co. v. Brooksher, 86 Ark., 91, 109 S. W., 1169; St. Louis S. W. Ry. Co. v. Jenkins,

89 S. W., 1106; Southwestern Portland Cement Co. v. Kezer, 174 S. W., 669; Steele v. American Oil Development Co., 92 S. E., 410; Texas Pacific Coal & Oil Co. v. Bruce, 233 S. W., 535; Thornton's Oil & Gas, p. 234; Todd v. Mfrs. Light & Heat Co., 90 W. Va., 45; Townes Texas Pleading (2d Ed.), p. 531; Vickery v. Dockray, 158 S. W., 1160; Wakeman v. Manufacturing Co., 101 N. Y., 209, 4 N. E., 264; Weller v. Missouri Lumber & Mining Co., 176 Mo. App., 243, 161 S. W., 853.

MR. JUSTICE GREENWOOD delivered the opinion of the Court.

Defendants in error Mrs. Suda Barker, M. H. Pickering, and W. M. Pickering sued plaintiffs in error Texas Pacific Coal & Oil Company and thirty-one others to recover from the Coal & Oil Company one hundred thousand dollars in damages, and for specific performance of a contract for the mineral development of a tract of 112 acres of land. The petition on which the judgment was sought is so vague that a full statement thereof is necessary. The petition alleged that since December 31, 1919, the defendants in error Mrs. Suda Barker, M. H. Pickering, and W. M. Pickering, together with Bascom Morton, Leona Morton, H. B. Lane, L. C. Harlow, R. L. Gattis, Mary Boland, F. S. Boland, W. T. Gattis, Earl Gattis, B. P. Cozart, J. H. D. Fleming, W. P. Ledbetter, J. F. Ledbetter, C. A. Gattis, Will Slatton, W. T. Rutherford, J. M. Slatton, J. C. Galloway, Mrs. M. C. Jobe, Marvin Brown, L. G. Haslip, Mrs. Maggie C. Foat, A. L. Styles, R. H. Clem, W. L. Mansfield, J. B. Reed, C. A. Donovan, Mattie Hodges, Dallas Hodges, C. E. Cooper, and the Four Square Investment Company, were "joint owners in fee simple of the mineral right of" a described 112 acre tract of land; that on December 31, 1919, all parties to the suit except plaintiff in error "did make, execute and deliver a certain contract to the defendant Texas Pacific Coal & Oil Company with reference to the operation and development of said above 112 acre tract of land for oil and gas purposes—the said defendant Texas Pacific Coal & Oil Company having a lease upon said 112 acres of land, together with a lease upon 16 acres" off the South half of three certain tracts of land, which embraced said 112 acres as their North half, "said 16 acres being a strip of land 37 varas wide and 2324 varas long running the long way East and West off of the North side of the South half of the hereinbefore described three tracts of land"; that the plaintiff in error "agreed that if both tracts of land should be thrown together and be treated as constituting only one

tract of land consisting of 128 acres that the said Texas Pacific Coal & Oil Company would agree immediately to test and develop said 128 acres of land for oil and gas purposes"; and thereupon the parties to the suit other than the Texas Pacific Coal & Oil Company did enter into a contract with said Company on December 31, 1919, to that end, one of the provisions of such contract being:

"As a further consideration for the execution of this merger agreement the Texas Pacific Coal & Oil Company hereby agrees that within 30 days from the date of the delivery of this merger agreement to W. J. Oxford, General Attorney for the Texas Pacific Coal & Oil Co. duly executed by all parties hereto that it will begin actual drilling of a well for oil and gas on some portion of said merged premises and will prosecute said drilling with reasonable diligence until oil or gas is obtained in paying quantities or until such depth has been reached as should obtain oil or gas in the Ranger field, taking into consideration the depth of other producing wells in said section of the county. And it further agrees that it will give due protection to said merged tracts of land against all offset wells drilled on adjacent property near enough to require an offset on these merged tracts, and it further agrees that it will dedicate at least one string of tools to the development of said merged tracts and will keep the same operating until the said tract of land is developed, or until sufficient proofs have been made on said tract of land as to convince the said lessee that other portions of it are dry and unworthy of further tests."

It was further alleged that plaintiff in error drilled a paying well on said merged tract of land which has produced three million cubic feet of gas per day since the——day of——in the year 1920; that after drilling said well plaintiff in error moved away its drilling equipment and tools and since failed and refused to further drill or test the land or to permit any other person to drill or test the land, notwithstanding the oil and gas in the land was being drained away by numerous, specified wells within short distances of the land, all in violation of the express and implied covenants of the lease binding plaintiff in error to fully develop the oil and gas in said premises and to protect the minerals on said premises from drainage from nearby wells on adjacent lands; that all other parties sued, save plaintiff in error, "were made parties hereto because of said defendants owning some royalty interest in said merged tract of land, but in this connection plaintiffs say that their interests and the interests of defendants are divisible and separated and these plaintiffs are not

suing for damages on behalf of said other defendants, but merely made said defendants parties in order that delay might not be had in the trial of this suit by the defendants claiming that they are necessary parties, and in this connection plaintiffs say that this is a suit merely for damages for and on behalf of the plaintiffs as to their particular interests in said merged tracts of land and for failure to properly develop and protect same"; that "the plaintiff Mrs. Suda Barker owns an undivided ———— interest in and to the minerals lying in and under said merged tracts of land; that the plaintiff W. M. Pickering is the owner of an undivided ———— interest in and to the minerals lying in and under said merged tracts of land; that the plaintiff M. H. Pickering is the owner of an undivided ———— interest in and to the minerals lying in and under said merged tracts of land, all of said interests being subject to the oil and gas lease owned and held by the Texas Pacific Coal & Oil Company."

The prayer of the petition was for judgment against plaintiff in error for "the sum of One Hundred Thousand Dollars as damages because of said defendant Texas Pacific Coal & Oil Company's failure to develop and operate said premises for oil and gas purposes and for failure to prevent the drainage of plaintiffs' land as aforesaid up to the trial of this cause; and plaintiffs further pray that upon final hearing hereof that said defendant be decreed and required to specifically perform its covenant, contract and agreement to drill offset wells upon plaintiffs' premises; that it be required by order and decrees of this court to at once begin drilling of such wells off-setting the well on the T. E. Davis tract; the two wells on the Gates Oil Company 25 acre tract; and one well on the Tex-Rickard Oil Co. 22½ acre tract; and one well on the W. W. Crab tract and for the drilling of such other and further wells as the Court in its discretion may adjudge that said defendant should be in equity and good conscience bound to drill in order to perform its obligations to diligently develop said tract of land, and for general and special relief at law or in equity."

Plaintiff in error specially excepted to this petition upon the ground that it failed to state a cause of action for damages for failure to properly develop the oil and gas on the 112 acres, in that the petition "fails, with any degree of certainty to allege the extent and nature of the development required," and in that the petition "fails to allege with any particularity, the drainage of oil and gas from said premises, or the amount thereof and its value."

Further answering, plaintiff in error filed a general denial, a plea of not guilty, and a special plea averring that on March 13, 1917, one W. T. Barker and wife, Suda Barker, executed and delivered to plaintiff in error an oil and gas lease on the 112 acres of land for a period of seven years from its date, which lease provided for an annual rental of $1.00 per acre per annum, less royalties, and an oil royalty of one-eighth of the oil produced and saved, and a gas royalty of ten per cent of the market price at the wells of gas sold; that in September, 1918, Leona Martin and Bascom Martin executed and delivered to plaintiff in error an oil and gas lease on an adjacent sixteen acres of land, which lease provided for an annual rental of $4.50 per acre per annum, less royalties, and an oil royalty of one-eighth of the oil produced and a gas royalty of ten per cent of the market price of gas sold; that on April 12, 1920, there was delivered to plaintiff in-error by W. T. Barker, Suda Barker, Leona Martin and Bascom Martin and other interested parties, a contract of merger of said two tracts of land, and of said lease, whereby the tracts were merged for development and royalty purposes, and whereby it was provided among other things that plaintiff in error would within thirty days commence the drilling of a well on said merged premises and would diligently prosecute such drilling until the well was completed, and that it would dedicate to said merged premises one string of standard tools until the land was fully developed or until sufficient proofs had been made on said tracts of land as to convince plaintiff in error that the other portions were dry and unworthy of tests; that plaintiff in error had drilled a well and discovered gas, and that from its own drilling and from other drilling on adjacent territory plaintiff in error "was and is of the opinion that the said premises are dry and unworthy of further tests"; and that plaintiff in error has paid all annual rentals and gas royalties promised in the leases.

The exceptions of plaintiff in error were overruled. The case was tried before a jury, and a verdict and judgment were rendered against plaintiff in error for $60,000.00 damages, and a decree for specific performances was entered requiring plaintiff in error to drill five additional wells on the merged tracts. On appeal, this judgment and decree were affirmed. 252 S. W., 809.

The special exceptions should have been sustained which challenged the sufficiency of the petition in so far as damages were sought for plaintiff in error's failure to drill wells either to offset producers on adjacent lands or to secure further oil and gas production from the leased premises.

Looking at the averments of both the petition and answer, the pleading is silent as to the specific fraction of oil and gas to which any plaintiff was to become entitled under the contracts sued upon. The pleading is silent with respect to the amount or value of oil or gas drained from the premises through wells on adjacent tracts, and with respect to the amount or value of oil or gas which would have been produced by plaintiff in error in the exercise of ordinary diligence. In the absence of such averments no cause of action was stated for the recovery of damages by the plaintiffs in any amount.

The rule which permits a lessor to recover damages for a lessee's breach of covenant to protect or develop oil or gas land rests on the assumption that it can be shown with reasonable certainty that the lessor has been deprived of the value of his portion of at least a certain quantity of oil or gas, worth a certain amount, which the lessee would have produced had he exercised proper diligence. Summers' Oil and Gas, sec. 139, p. 449.

In Blair v. Clear Creek Oil Company (Ark.), 230 S. W., 289, 290, the court said:

"The lessee under the facts disclosed by the record is liable to the lessors for their proportionate share of the gas taken by the wells drilled so near their boundary lines as to draw off the gas underneath their land. There is no reason why it cannot be ascertained with reasonable certainty what quantity and quality of gas has been and will be taken from appellants' land through the wells drilled and operated by appellee on the adjoining land. Culbertson v. Iola Portland Cement Co., 87 Kans., 529, 125 Pac., 81, Ann. Cas. 1914A, 610. * * * Because the nature of the inquiry makes it practically impossible to ascertain with certainty the exact amount of the lessor's damage is no reason why the lessor should not have an action for damages for the breach of the implied covenant. It is true the law does not permit a witness to speculate or conjecture as to probable damages; yet experienced persons who are acquainted with the gas-bearing conditions of the lands in the locality of the leased premises can give an opinion as to the amount of gas drawn off the premises and lost by the failure of the lessee to comply with its implied covenant. The rule is that, while the law will not permit witnesses to speculate or conjecture as to possible or probable damages, still the best evidence of which the subject will admit is reasonable, and there is often nothing better than the opinion of well-informed persons upon the subject under investigation. Chamberlayne on Modern Evidence, Vol. 3, Secs. 2331–2332, and St. L.,

I. M. & S. Ry. Co. v. Brooksher, 86 Ark., 91, 109 S. W., 1169. From the evidence already taken it would seem that the gas producing on the leased premises and the land adjacent thereto is of uniform character, and that expert witnesses can with a reasonable amount of certainty tell the amount of gas that will be drawn from the leased premises by the wells dug near the boundary line by the lessee on the adjacent premises. When the amount of gas that will be drawn from the leased premises is ascertained, the amount of damages to be recovered can be readily fixed by the royalty that the lessor was to receive."

The vendor of one Sherman Culbertson gave a gas lease on a tract of land in consideration of $50.00 annually for each well on the land from which gas was produced and for the further consideration of one-eighth of all money received from the sale of gas. Such vendor having assigned his rights to Culbertson, the latter sued the Iola Portland Cement Company and another who had acquired the rights of the original lessee, for damages for failure to pay for gas produced and also for failure to pay for gas taken from the premises through wells drilled on adjoining lands. The petition averred that two producing gas wells were developed on the leased premises and that while Culbertson could not state the amount of gas taken from the land, yet that by means of the two producing wells and by means of drainage from wells on adjacent tracts, the defendants had taken each day more than 3,000,000 cubic feet of gas worth three cents per thousand cubic feet. In affirming a judgment in favor of Culbertson for damages in the sum of $2252.47, the Supreme Court of Kansas said:

"Nor is there any reason why appellee was not entitled to show the quantity of gas taken from his land through wells drilled on adjoining lands. It was reasonably well established that there was a pool of gas under appellee's land which extended under adjoining lands on which appellants had wells that were being operated. It is clear that the taking of gas from these wells would drain that underlying the land of appellee. * * * According to the findings, appellants failed to develop the land in such a way as to give appellee his proportionate share of the gas produced from the pool, and that to have done so would have required the sinking of at least another well. Having failed in this respect the appellee is entitled to recover his share of the gas actually taken from his land without regard to which side of the line the wells through which it was taken were sunk. The quantity so taken appears to have been fairly well estab-

lished by the evidence. In Howerton v. Gas Company, 82 Kan., 367, 108 Pac., 813, it was said: 'No reason is shown why witnesses of experience, acquainted with the gas field, may not testify with reasonable accuracy as to the number of wells which should have been drilled on the leased land, both for protection from drainage by neighboring leaseholders and to obtain the gas underneath the land.' Nor is there any reason why witnesses could not as well testify with reasonable accuracy as to the quantity of gas obtained from the wells." Culbertson v. Cement Co., 87 Kan., 534, 535.

The amount and value of oil or gas production, obtained or obtainable through reasonable diligence, must be definitely alleged and must be proven with reasonable certainty before damages may be allowed for breach of an express or implied covenant to continue the production of oil or gas, whether such damages result from failure to produce oil or gas or from loss of same by drainage.

Macon v. Trowbridge, 38 Colo., 335, was a case where damages were sought for failure to produce ore, as required by the mining contract. In that case, the court said:

"The failure, therefore, of the lessee to work and develop the property as provided rendered him liable for such damages as the appellants could show they suffered by reason of such failure. The amount of such recovery, if any, would depend upon the amount of ore that could have been mined, if reasonable diligence had been exercised, and its value."

The Court of Appeals of New York, in an opinion by Justice Peckham, which has been quoted approvingly by the Supreme Court of the United States, gave the reason for not permitting a defendant to escape liability for the breach of covenants like those here involved because of difficulties necessarily encountered by a plaintiff in proving his damages. In Justice Peckham's opinion, it is said:

"In using the words 'uncertain, speculative and contingent,' for the purpose of excluding that kind of damage, it is not meant to assert that the loss sustained must be proved with the certainty of a mathematical demonstration to have been the necessary result of the breach of covenant by the defendant. The plaintiff is not bound to show to a certainty that excludes the possibility of a doubt that the loss to him resulted from the action of the defendant in violating his agreement. In many cases such proof cannot be given, and yet there might be a reasonable certainty founded upon inferences legitimately and properly deducible from the evidence that the plaintiff's loss was not only in fact occasioned by the defendant's viola-

tion of his covenant, but that such loss was the natural and proximate result of such violation. Certainty to reasonable intent is necessary, and the meaning of that language is that the loss or damage must be so far removed from speculation or doubt as to create in the minds of intelligent and reasonable men the belief that it was most likely to follow from the breach of the contract and was a probable and direct result thereof. Such a result would be regarded as having been within the contemplation of the parties and as being the natural accompaniment and the proximate result of the violation of the contract . . . The proof may sometimes be rather difficult upon the question whether the damage was the just or proximate result of the breach of the covenant. In such case it does not come with very good grace from the defendant to insist upon the most specific and certain proof as to the cause and the amount of the damage when he has himself been guilty of a most inexcusable violation of the covenants which were inserted for the very purpose of preventing the result which has come about." U. S. T. Co. v. O'Brien, 143 N. Y., 288; Hetzel v. B. & O. Railroad, 169 U. S., 38.

However, the fact that the plaintiff is relieved in cases of this character from making his proof with mathematical certainty does not relieve him from averring the facts on which his right to recover is grounded. The Supreme Court of West Virginia held in Todd v. Light & Heat Company, 90 W. Va., 45, that allegations were altogether too general and indefinite to warrant recovery of damages or to warrant the cancellation of a lease where no facts were averred, "except that the tract of land containing 124 acres lies within a gas producing section, is surrounded by producing wells owned by the Manufacturers' Light & Heat Company, has been drilled to the extent of only one well and would be further drilled by another company, if permitted by the operator."

The defect in the petition under consideration is not in failing to plead a measure for plaintiffs' damages. The defect arises from the omission of allegations of facts essential to the statement of a cause of action for damages. The petition avers nothing on which to ground the prayer for $100,000 damages save that the plaintiffs were parties to a contract which required the protection and development by plaintiff in error of certain oil and gas deposits in which plaintiffs had undefined and unstated interests, that such development had been withheld, and that large, unstated amounts of the gas and oil, of unstated values, had been lost through drainage from wells on adjacent lands.

The language of the contract lends no support to plaintiff in error's contention that it was under no obligation to protect the leased premises from drainage through wells previously drilled on adjacent tracts. It is manifest that the fact that producing wells were already in existence on adjacent lands furnished an emergent necessity for requiring plaintiff in error to expressly obligate itself "to give due protection to said merged tracts of land against *all* offset wells drilled on adjacent property near enough to require an offset on these merged tracts." The single test determining whether plaintiff in error was obligated to sink an offset well was whether reasonable care required such offset in view of conditions at and after the date of the contract.

In so far as the contract expressed the obligation of plaintiff in error to develop gas or oil, upon discovery of same in paying quantities, such obligation embraced: first, the duty to give "due protection" against wells on adjacent property near enough to require offset wells; and, second, the duty to keep at least one string of tools in operation until the land was developed, provided drilling might be discontinued upon sufficient proofs being made *on the merged tracts* to convince plaintiff in error that the untested portions of such tracts were dry and unworthy of further tests. Until proofs had been made on the untested area and had convinced plaintiff in error of the unproductive character of same, there could be no discontinuance of operations by plaintiff in error, regardless of its good faith, without breach of the express covenant for continuous drilling operations. The contract being silent as to the care with which such operations should be carried on, the law required same to be conducted with reasonable care, that is, with ordinary care. With the contract requiring "due protection" against drainage, as well as requiring the continuance of drilling operations until full development of the minerals, and with the contract silent as to how such protection was to be given, as it was silent as to how continued drilling operations were to be conducted, the law exacted of plaintiff in error in both particulars the same ordinary care. As accurately enunciated by Summers: "Whenever a duty to perform an act of series of acts is fixed by contract or implication of law, and the time, manner, and extent of performance is not fixed, the law implies that such act or acts shall be performed within a reasonable time and with reasonable diligence. Where, therefore, oil and gas leases do not state the time, manner, and extent of performance of express and implied duties to test, develop and protect the land and

market the product, the courts have of necessity tested the lessee's performance by the standards of reasonable time and reasonable diligence." Summers' Oil & Gas, sec. 132, p. 424.

The Supreme Court of Texas has never approved the view, prevailing in some jurisdictions, that the lessee's judgment, exercised in good faith, is conclusive on whether the lessee has performed the obligations, expressed or implied in the usual oil or gas lease, relative to oil or gas production and protection. In Grubb v. McAfee, 109 Texas, 531, the conclusion of the Commission of Appeals was declared to be correct "that the law implied the obligation from defendant in error to *exercise reasonable diligence* to continue drilling and mining operations on the land after oil was encountered in the first well." Among the cases cited in Grubb v. McAfee, to sustain the rule that reasonable diligence is the standard by which to measure the lessee's performance of the usual obligations to develop and protect minerals found in paying quantities, was Brewster v. Lanyon Zinc Company, 72 C. C. A., 243, 140 Fed., 801, wherein the Court, in an opinion by Judge Van Devanter, after referring to the doctrine announced by some courts that the bona fide judgment of the lessee should be conclusive, said:

"With great deference to the able courts which have adopted this view, we think it is not sound. In the absence of some stipulation to that effect, we think an oil and gas lease cannot be said to make the lessee the arbiter of the extent to which, or the diligence with which, the exploration and development shall proceed. The operations contemplated, in the event oil and gas are found in paying quantities, are not to be likened unto a business in which one puts property, money and labor exclusively his own, the profits and losses in which are of concern only to him, and the conduct of which may be according to his own judgment, however erroneous it may be. By reason of the conditions on which the lease is granted the lessor retains at least a contingent interest in the oil and gas, to the profitable extraction of which the operations are directed. This interest in the subject of the lease, and the fact that the substantial consideration for the grant lies in the provisions for the payment of royalties in kind and in money on the oil and gas extracted, make the extent to which and the diligence with which the operations are prosecuted of immediate concern to the lessor. If they do not proceed with reasonable diligence, and by reason thereof the oil and gas are diminished or exhausted through operation of wells on adjoining lands, the lessor loses, not only royalties to which he would other-

wise be entitled, but also his contingent interest in the oil and gas which thus passes into the control of others. The object of the operations being to obtain a benefit or profit for both lessor and lessee, it seems obvious, in the absence of some stipulation to that effect, that neither is made the arbiter of the extent to which or the diligence with which the operations shall proceed, and that both are bound by the standard of what is reasonable. This is the rule in respect of all other contracts where the time, mode, or quality of performance is not specified, and no reason is seen why it should not be equally applicable to oil and gas leases. There can, therefore, be a breach of covenant for the exercise of reasonable diligence, though the lessee be not guilty of fraud or bad faith."

Plaintiff in error was entitled to have the court give a charge such as it requested to the effect that it was under no duty to drill wells, at a loss to itself, for protection or for further development. Summers' Oil & Gas, sec. 135, pp. 434, 435. The opinion in Brewster v. Lanyon Zinc Company, supra, points out that:

"The large expense incident to the work of exploration and development, and the fact that the lessee must bear the loss if the operations are not successful, require that he proceed with due regard to his own interests as well as those of the lessor. No obligation requires him to carry the operations beyond the point where they will be profitable to him, even if some benefit to the lessor will result from them. It is only to the end that the oil and gas shall be extracted with benefit or profit to both that reasonable diligence is required."

The court's charge should make plain that it was the duty of the lessee to drill an offset or additional well if, considering the cost of same and the probable profit therefrom, he would have been doing what an ordinarily prudent person would have done under the same circumstances. Summers' Oil & Gas, sec. 135, pp. 434, 435.

The instruction given the jury with respect to their assessment of damages was the following:

"In arriving at the amount of damages to be assessed, if any, in this case, you are instructed that you can only take into consideration the respective interests of plaintiffs in the land in controversy as from a royalty standpoint, that is to say, that plaintiffs' damages, if any, would be the amount of royalty payable to them either in oil or gas or the value thereof as held by plaintiffs at this time."

Plaintiff in error objects to this charge on the ground that it fails to state that the measure of plaintiffs' damages for failure to prop-

erly develop the land was six per cent per annum interest on the value of the royalty which would have been paid to plaintiffs had the land been properly developed. The Supreme Court of West Virginia in Grass v. Big Creek Development Company, 75 W. Va., 719, 84 S. E., 750, 1915E L. R. A. 1065, stated that the lessors in that case had "lost nothing more than interest on the value of production obtainable had defendant exercised that degree of diligence we have suggested as due under certain conditions and circumstances." In that case, the Court also observed that to allow a lessor to recover his royalty on oil not produced was to allow twice as much as just compensation since the oil remained in the ground. Before the West Virginia court criticised the rule allowing a lessor to recover the value of his royalty on oil which should have been produced, for breach of a lessee's covenant for oil production, it refused to measure the lessee's duty with respect to development and production, by the standard of reasonable diligence, where the lease fixed the duty and failed to prescribe how such duty was to be performed, holding that in the absence of fraud or bad faith the judgment of the lessee alone was final. Just as we have been unable to concur in the conclusion that the lessee should be the sole arbiter of diligence in the matter of mineral development and production, so we do not approve of the conclusion that interest alone on royalty withheld should measure the lessor's damages for the lessee's breach of express or implied covenants for mineral development and production. The "interest rule" would be impracticable in actual application because of difficulties in fixing the period for which interest should be awarded, and also because adoption of the rule would invite intolerable litigation. Moreover, the award of interest only does not give the lessor what he would have received had the lessee performed his obligation.

The purpose of the law to give compensation for breach of contract is subserved by allowing the injured party to have the value to him of the contract's performance. 3 Williston on Contracts, sections 1338, 1339, pages 2392 to 2394. Performance of a covenant to produce a certain quantity of oil or gas, under a contract promising royalty, is worth to the lessor as much as the value of his royalty at the time the oil or gas should have been produced and delivered or marketed. Therefore, to allow the lessor the value of royalty wrongfully withheld from him complies with the law's fundamental purpose of adequate compensation. The lessor is put in the same position as though the contract had been performed. Freeport

Sulphur Company v. American Sulphur Royalty Company of Texas, this day decided.

Under sound fundamental principles, no deduction should be made from the value of the lessor's royalty on account of the value of unmined minerals which the lessee was entitled to remove from the leased premises. The lessor pays the consideration for the lessee's performance by his conveyance to the lessee of the oil and gas where the lease is in the ordinary form. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas, 160. As declared by Professor Williston: "Where a unilateral contract is broken, the only performance to be valued is that of the defendant promisor. The plaintiff ex hypothesi has already performed and is therefore entitled to the full value of the defendant's performance. The situation is the same where the contract was originally bilateral but the plaintiff has fully performed his part." 3 Williston on Contracts, sections 1349 and 1350, page 2408.

Under the jury's findings, the lessee failed to get oil or gas which it should have produced for no other reason than its own wrongful refusal to take or accept same. After the execution of the lease and merger contract, nothing more was required of the lessors to entitle them to their royalty. To deny them the full value of their royalty, under such circumstances, would not accord with the prevailing doctrine in most American courts which allows the seller to recover the full purchase price, without diminution, where title to property contracted to be sold does not pass to the buyer for the sole reason that he wrongfully refuses to take the title. 3 Williston on Contracts, sections 1364, 1365, 1399, pages 2436, 2437, 2484; 2 Williston on Sales (2d Ed.), sections 561, 562, pages 1398 to 1400; Whited v. Johnson, 167 S. W., 813, 814; Empire Gas & Fuel Co. v. Pendar, 244 S. W., 192.

The text writers are in rare accord in fixing the measure of damages for breach of covenants to fully develop oil and gas lands or to protect same from drainage.

Summers says: "The nature of the subject-matter is such that it is practically impossible to determine with certainty how much a lessor has lost in the way of royalties or rentals by the failure of his lessee to fully develop the premises or drill wells to offset those on adjoining lands. The difficulty lies in the proof rather than in the measure of damages. If it can be shown with reasonable certainty that the land would have produced a certain amount of gas or oil, or a certain amount more than it did produce, had the lessee

exercised reasonable diligence in drilling additional or offset wells, the proper measure of damages is the value of the lessor's royalty of such oil or gas at the time it should have been produced and marketed." Summers' Oil & Gas, sec. 139, p. 449.

While the Cyclopedia of Law & Procedure announced: "The measure of damages for the lessee's failure to mine coal which he should have mined under the lease is the difference between the stipulated royalty on such coal and its value in the mine," 27 Cyc. 710 k (II), yet Corpus Juris later declared: "A breach of the implied covenant to proceed with reasonable diligence in exploring, developing and operating the land for oil and gas, or to protect the oil and gas from waste through wells on adjacent property, gives the lessor a right of action for the damages sustained thereby. * * * It is no defense to an action for damages for breach of covenant * * * that the damages recoverable may be difficult of determination and ascertainment; or that the lessee acted in good faith in not developing the property; or that the oil or gas has not been drawn off, but is still in the premises; nor can the lessee take advantage of his own default to defeat the liability created thereby." 40 Corpus Juris, sec. 716, page 1095.

The Cyclopedia of Law and Procedure cited in support of the lessee's right to offset against the lessor's royalty the value of the unmined minerals the single case of Lyon v. Miller, 24 Pa. St., 392. When a similar question was later before the Supreme Court of Pennsylvania, the court upheld the refusal of a charge that the lessor could recover no more than nominal damages if "the coal in the mine was worth a greater rent at the termination of the defendant's lease than the defendant stipulated to pay." The court justified the refusal of the charge as follows:

"It can hardly be said that this plea was a ground of defense at law for a breach of the covenant sued on. It does not aver performance in any shape, nor does it show that it was contrary to law that it should be performed. If it be a plea at all, it is an equitable plea or defense. It says to the plaintiff, true it is I entered into the covenants for the breach of which I am sued, and did commit the breaches charged, but it was better for you that I did. You now get more for your coal than I agreed to give you. You are therefore entitled to nominal damages only. Such equity, it is apparent, rests not on any merit in the party claiming it, but arises exclusively in his bad faith in not regarding his covenants. There is no such principle in equity as this. If sanctioned it would be a panacea to

heal every broken covenant where performance was stipulated for. The defendant had three alternatives, either of two of which would have relieved him from all damages: namely, the performance of his covenants as they were written, or showing that they were dispensed with by some inability to perform provided against in the lease; the third to terminate the lease at the end of any year, on giving the notice required, and this would have released him from liability for any breach but for the past year. He chose to do neither, and now claims to show that he has done better for the plaintiffs by keeping their coal in place for a higher price. This policy, if taken in time and extended, might have covered the entire coal region, and but a single mine might have been worked. Competition thus set at defiance would undoubtedly be profitable to such a lessee, if, when called on to answer in damages to other lessors for broken covenants, he might successfully defend himself by showing that there were parties who had given, or were willing to give, higher prices for the unmined coal than he had contracted to give. If he could do this he might be fairly entitled to stand acquitted of damages and to have the credit of a discovery!" Powell v. Burroughs, 54 Pa. St., 335.

White on Mines and Mining Remedies states at page 235, section 170: "The measure of damages which the lessor would be entitled to recover for the violation of a covenant to drill sufficient wells to properly test the land for oil, would, ordinarily, be the rent or royalty, which would have resulted to such lessor, had the lessee complied with such covenant, and upon this question expert evidence would be competent as to the probable amount of, or whether any recovery should be allowed."

Morrison-De Soto's Oil and Gas Rights, pages 209 and 210, approves the rule applied in Illinois in saying: "Where the lessee has breached his covenant to operate a well, the Courts agree that it is impossible to ascertain the exact amount of damages, but they widely disagree as to what is the proper measure by which to approximate the damages. The case of Daughetee v. Ohio Oil Co., 151 Ill. App., 102, is the only one which gives a practical ruling with reasonable clearness. The trial court instructed the jury to find the quantity of oil which the lessee did produce and subtract it from the quantity which he should have produced, and give to plaintiff lessor his royalty, one-eighth of the difference. This was approved in the decision affirming the lower court, (263 Ill., 518, 105 N. E., 308), with the observation that the fact that the damages could not be

ascertained with exactness was no reason for denying any relief. The Court further held that the fact that the oil still remained in the ground, the property of the lessor, was no defense to the action."

Thornton's Law of Oil & Gas, section 869, page 1634, seems to adopt the measure of damages suggested by the Supreme Court of Pennsylvania in Bradfield Oil Company v. Blair, 113 Pa., 83, 4 Atl., 218, saying: "The measure of damages for a breach of an implied covenant to develop land or operate it after development is as follows: Ascertain how much more oil the lessor ought to have received than he actually did receive, and the value of it during the time when it should have been delivered to him; from this deduct the cost of providing what ought to have been produced at the time, under the circumstances, and with the appliances then known; and add to this remainder the interest on it from the time when the oil ought to have been produced to the time of the trial." As pointed out by the Supreme Court of West Virginia, it is manifestly erroneous to deduct from the value of the lessor's royalty the "cost of providing what ought to have been produced," where the contract, as in most cases, requires such cost to be borne by the lessee. Ammons v. South Penn. Oil Co., 35 S. E., 1013. Eliminating this deduction, so manifestly unauthorized unless the lessor is to bear the cost of production, the rule laid down by Thornton accords with that announced by Summers and others.

The following cases announce the correct doctrine which requires the lessee to pay the lessor the amount he actually loses by awarding him, without deduction, the full value of royalty lost to him through the lessee's failure to exercise ordinary care to either develop the minerals in the leased premises or to protect same from drainage by nearby wells. Berwind-White Coal Min. Co. v. Martin, 124 Fed., 316, 317; Gilmore v. Ontario Iron Co., 86 N. Y., 458–460; Consolidated Coal Co. v. Peers, 150 Ill., 354; Stoddard v. Ill. Imp. Co., 275 Ill., 205; Woodland Oil Co. v. Crawford (Ohio), 34 L. R. A., 67; In Re Estate of Wilson, 142 Iowa, 527; Howerton v. Gas Co., 82 Kans., 368, 34 L. R. A. (N. S.), 46, 108 Pac., 813.

We do not mean to say that a lessee, desiring and offering to go on and comply with his obligations, might not be able to invoke the aid of a court of equity in such a way as to obtain the benefit of unmined minerals on which such lessee had been required to pay royalties. Since the effect of judgment in favor of the lessor for the value of royalties is to award specific performance of the lessee's obligation, the lessee might be able to present a state of facts under

which a court of equity would be warranted in decreeing to the lessee like specific performance by the lessor, including delivery of the minerals on which the royalty had been paid. Freeport Sulphur Company v. American Sulphur Royalty Company of Texas, infra. However, in this case plaintiff in error has not attempted to plead or prove facts to entitle it to any such affirmative, equitable relief.

It is unnecessary to discuss plaintiff in error's further objections to the court's charge on the measure of damages, since we have already laid down the proper measure for such damages, which can be followed on a new trial.

The judgments of the District Court and of the Court of Civil Appeals are reversed and the cause is remanded to the District Court for a new trial.

*Reversed and remanded.*