**MAGNOLIA PETROLEUM CO. v. PAGE et al.**

No. 10723.

Court of Civil Appeals of Texas.
San Antonio.

May 22, 1940.

Rehearing Denied June 19, 1940.

Boone, Henderson, Boone & Davis, of Corpus Christi, and Walace Hawkins and Ross Madole, both of Dallas, for appellant.

Vinson, Elkins, Weems & Francis and I. M. Wilford, all of Houston, and Sidney P. Chandler, of Corpus Christi, for appellees.

MURRAY, Justice.

Appellee Sallie H. Page, a widow, and her four children, J. H. Page, R. C. Page, Mary Riley and Maude Nichols, joined also by F. M. Riley and C. R. Nichols, husbands of Mrs. Riley and Mrs. Nichols, instituted this suit, on November 3, 1937, in the 28th District Court of Nueces County, against appellant, Magnolia Petroleum Company, a corporation, seeking to recover damages for failure of appellant to use due diligence in drilling offset wells to those on adjacent lands in order to prevent drainage and for failure to use due diligence in developing the premises of appellees for oil and gas. A copy of the mineral lease executed by appellees to appellant was made a part of the petition.

Magnolia Petroleum Company filed a cross-action against Crown Central Petroleum Corporation, alleging that on May 3, 1937, it entered into a contract with the Crown Central Petroleum Corporation, said contract being completed by an assignment dated June 24, 1937, wherein and whereby Magnolia Petroleum Company sold the Sallie Page lease to Crown Central Petroleum Corporation, reserving from said assignment 8.83 acres in the northwest corner of said lease.

Magnolia Petroleum Company further alleged that it had joined the Crown Central Petroleum Corporation in releasing to Mrs. Page and her children all of the original 75 acres held by it under the lease, save and except the 8.83 acres immediately surrounding the Sallie Page No. 1 well drilled by it in the north end of the lease, and also excepting 10 acres immediately surrounding each of the three wells, known as Sallie Page—Crown Central Petroleum

Corporation Nos. 4, 5 and 6. The premises thus released amounted to 36.17 acres.

The situation at the time of the trial was as follows: The Sallie Page original lease covered 75 acres, 30 acres was held by Crown Central Petroleum Corporation, 8.83 acres was held by Magnolia Petroleum Company, and 36.17 acres had been released to Mrs. Page and her children.

The Sallie Page lease is located in what is known as the Saxet Oil Field, and the regulations of the Railroad Commission of Texas allows only one well to every 10 acres. Therefore, at the time of the trial that part of the lease which had not been released was fully developed. Appellees did not request any issues as to the 8.83 acres held by Magnolia Petroleum Company, and no issues were asked as to the 36.17 acres released to the Pages. The real issue finally submitted to the jury was whether the 30 acres now held by the Crown Central Petroleum Corporation should have been developed while it was held by the Magnolia Petroleum Company and prior to the time it was transferred to the Crown Central Petroleum Corporation.

The case was tried to a jury on special issues, and upon the verdict judgment was entered for appellees (other than the Crown Central Petroleum Corporation) in the sum of $22,256.70. No recovery was allowed Magnolia Petroleum Company on its cross-action against Crown Central Petroleum Corporation, from which judgment Magnolia Petroleum Corporation has prosecuted this appeal.

The Sallie Page lease contained the following expressed covenants which have a bearing on the duties of the lessee to prevent drainage from the lease and to use reasonable diligence to develop the premises for oil and gas, to-wit: "In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land, and within 200 feet of and draining the leased premises, lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances. The judgment of the lessee, when not fraudulently exercised, in carrying out the purposes of this lease shall be conclusive."

▆▆ It is unquestionably the law that where the lease is silent as to the duty of a lessee to drill offset wells to prevent drainage that an implied covenant will be presumed and such implied covenant would re- quire the drilling of such offset wells as a reasonably prudent operator would have drilled under the same or similar circumstance. Texas Law Review, June, 1933, p. 399. Article by Hon. A. W. Walker, Jr.; Texas Co. v. Davis, 113 Tex. 321, 336, 254 S.W. 304, 255 S.W. 601; Chapman v. Ellis, Tex.Civ.App., 254 S.W. 615; State Line Oil & Gas Co. v. Thomas, Tex.Civ.App., 35 S.W.2d 746; Taubert v. Earle, Tex.Civ. App., 133 S.W.2d 145.

▆▆ It is likewise the law that when a lease is silent as to the duty of the lessee to develop the lease and there is no provision for the payment of delay rentals in lieu of drilling or where the period of the lease when delay rentals may be paid has expired, then there is an implied covenant requiring the lessee to use such diligence in drilling and developing the lease for oil and gas as a reasonably prudent operator would use under the same or similar circumstance. There must be a reasonable expectation that oil or gas can be produced in paying quantities. By paying quantities is meant that it must be reasonably certain that oil can be produced in such quantities as to pay the cost of development and production and a reasonable profit to the lessee.

▆ However, when expressed covenants appear in the lease, implied covenants disappear. In this lease there is an expressed covenant as to appellant's duty with reference to avoiding drainage from the leased premises. It is true that such a covenant as to drainage applies only during the primary term of the lease. In other words, only so long as the provision for the payment of delay rentals in lieu of drilling is effective. Humble Oil & Refining Company v. Strauss, Tex.Civ.App., 243 S.W. 528.

However, regardless of this there was an expressed covenant in the lease which provides that "the judgment of the lessee, when not fraudulently exercised, in carrying out the purposes of this lease shall be conclusive". It is therefore apparent that before appellees can recover from appellant they would be required to both allege and prove that when appellant decided not to further develop the Page lease, after it completed the Sallie Page Well No. 1, as a gas well, it did so fraudulently, or at least in bad faith. Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 117 A. L.R. 61.

▆ The only allegations made by appellees as to fraud are found in paragraph IX

of the petition, which reads as follows: "The plaintiffs would further show to the Court that under the facts and circumstances as hereinbefore alleged, the action of the defendant in not drilling, exploring, developing and causing production to be obtained upon said land, and in not preventing the drainage therefrom as hereinbefore alleged, has been in bad faith, deliberately and fraudulently done in violation of the terms and provisions of said lease to the damage of the plaintiffs, as hereinbefore alleged, for all of which they are entitled to have judgment with interest and costs of suit."

These allegations are mere conclusions of the pleader and when taken in connection with the other allegations of the petition mean nothing more than that appellant did not use due diligence in developing the lease and in preventing drainage. Such allegations are insufficient. Before a recovery could be had under the provisions of this lease the allegations and the proof would have to not only show that appellant did not use due diligence to develop the lease and to prevent drainage, but that it had been guilty of bad faith in determining not to further develop the lease.

Appellant's exception to the petition should have been sustained. Neither is the proof sufficient to establish fraud.

The judgment will be reversed and the cause remanded.