**J. A. CHAPMAN et al., Appellants,**

v.

**SOHIO PETROLEUM COMPANY et al.,
Appellees.**

No. 5196.

Court of Civil Appeals of Texas.

El Paso.

Dec. 5, 1956.

Rehearing Denied Dec. 26, 1956.

Steve Preslar, McCamey, George A. Carlson, Tulsa, Okl., Henry Russell, Pecos, for appellants.

Perkins & Bezoni, Midland, J. A. Rauhut, Austin, Walter B. Morgan, Robert C. Maley, Jr., Houston, George N. Otey, Ardmore, Okl., Ben G. Smith, Ft. Worth, for appellees.

HAMILTON, Chief Justice.

The appellants, J. A. Chapman et al., filed this suit in the trial court against appellees and certain royalty-owning defendants, alleging the execution of two oil and gas leases on May 29, 1943, on Section 1, J. T. Priest Survey, in Upton County, Texas, by the predecessors in title to appellants, A. P. Hill et ux., and W. M. Hill et ux., to M. A. Smith. Both leases are for a term of ten years and as long as oil, gas or other minerals are produced from said land. The petition alleges that appellees acquired the leasehold estate. Each of the leases contained provision that if a well producing in "paying quantities should be brought in on adjacent lands, and within 150 feet of and draining the leased premises, lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances." The petition further alleges failure to protect the leased premises from drainage and a failure to reasonably develop the leased premises, and asks for damages in the amount appellants could have realized had the necessary offset wells been drilled, and had said premises been reasonably developed. The petition also alleges that a large part of said drainage was caused by appellees, who owned offset leases and drilled thereon and drained appellants' lands, and which wells they did not offset. The petition alleges that production is found in the area in question in what is known as the Spraberry formation.

The case was tried by the court without a jury, and the trial court rendered judgment for appellees and against appellants. The transcript of the record and the statement of facts is now properly before this court on appeal.

While the appellants base their appeal on eight points, there are really only three questions to be determined. One is whether or not a reasonably prudent operator would have drilled two offset wells to prevent drainage from producing wells adjacent to the land in question; second, whether or not a reasonably prudent operator would have drilled two additional wells under his implied obligation to reasonably develop the premises.

In discussing the first question, we will assume that appellees were not relieved of the implied obligation to protect said leased premises from drainage by a provision in the lease requiring the drilling of an offset well to an adjacent well within 150 feet of and draining the leased premises, even though there was no adjacent well that close to the premises. We do so because, after the drilling of the Clara Hill No. 1 and No. 2 on the leased premises in question during 1952, such provision no longer applied: Humble Oil & Refining Co. v. Strauss, Tex.Civ.App., 243 S.W. 528; Magnolia Petroleum Co. v. Page, Tex.Civ.App., 141 S.W.2d 691 (wr. ref.).

It appears that the test as to when the duty to drill offset wells when drainage is taking place, and the duty to reasonably develop the premises arises, is what a reasonably prudent operator would do under similar facts and circumstances. Offset wells are not required to be drilled, even though there is drainage, when an operator

could not drill same, equip and produce the oil therefrom at a reasonable profit to himself. The same is true under implied obligation to develop after production has been obtained on the leased premises: Fort Worth Nat'l Bank v. McLean, Tex.Civ. App., 245 S.W.2d 309; Magnolia Petroleum Co. v. Page, Tex.Civ.App., 141 S.W. 2d 691 (error ref.); Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 60 A.L.R. 936, at page 946; Tide Water Associated Oil Co. v. Stott, 5 Cir., 159 F.2d 174.

■ Appellees took the position, in the trial, that to drill the offset wells required by appellants, and to further develop the premises by drilling of at least two additional wells would be imprudent operation, and that the drilling of any additional wells, either offset or otherwise, would have been at a loss to the operator. The court, after hearing all of the evidence, held that there was sufficient evidence to sustain the appellees' position. We are bound by the court's finding, if we find that there is any evidence in the record of probative force to sustain the court's finding. We are of the opinion that the record contains ample evidence to sustain the court's finding.

■ It was stipulated by the parties that the cost of drilling and equipping a well in this area was $95,000. There was undisputed evidence that, had two additional wells been drilled as requested by appellants, the market values of the wells would have been $83,500 and $79,500, respectively. This value takes into consideration that the well purchaser expects to make a reasonable profit after paying for the well and cost of production of the recoverable oil in place. It would not seem to be good business to put $95,000 into the drilling and equipment of a well when its value, when completed, would be much less than that amount. There is evidence that the amount of oil in place under Section 1, the leased premises in question, is 170 barrels per acre. Evidence further shows that the two wells completed on these two premises have already produced as much, or more, than was actually in place under the section when the discovery well for this area was brought in in 1951. In other words, what oil was drained from the leased premises by the adjacent well was more than offset by drainage to the leased premises from other lands. There was evidence that, under the peculiar conditions existing in the Spraberry formation, one well could recover all the recoverable oil in place under 320 acres, and that the early drilling of the Clara Hill No. 1 and No. 2 on the leased premises in question accounted for the fact that appellants have received royalties on all the oil that was in place under their land when the discovery well in the area was brought in, which fact further sustains the court's ruling in that there is evidence that the appellants suffered no damage from the alleged failure to offset wells or further develop the premises.

■■ The third question raised by appellants was the complaint that the court erred in not allowing them to file an amended petition on the day the case went to trial, setting up that the Clearfork formation, some five or six hundred feet above the Spraberry, should have been developed and considered in determining whether the property had been reasonably developed. The allowing of the amendment at this late date was within the sound discretion of the court. When we have seen the vast amount of technical and expert testimony that was introduced with reference to the Spraberry formation, and the pros and cons of what "reasonable development" consisted, and realizing the weeks and maybe months that it must have taken for the witnesses to have acquainted themselves with the question of reasonable development as it pertains to this section of land, we feel that the court did not abuse its discretion in refusing the appellants' request, over objection, to file such an amendment on the day the case went to trial.

All of appellants' points are overruled, and judgment of the trial court is affirmed.