Wenona GOOD, Individually, and as Independent Executrix of the Estate of Arnold A. Good, a/k/a A.A. Good, Deceased, et al., Appellants,

v.

TXO PRODUCTION CORP., et al., Appellees.

No. 07–87–0292–CV.

Court of Appeals of Texas, Amarillo.

Dec. 30, 1988.

Rehearing Denied Jan. 25, 1989.

Robert D. Lemon, Mitchell G. Ehrlich, Lemon, Shearer & Ehrlich, Perryton, Bruce M. Kramer, Professor of Law, Texas Tech University, Lubbock, for appellants.

Charles R. Watson, Jr., Culton, Morgan, Britain & White, Thomas R. Dixon, Jr.,

Underwood, Wilson, Berry, Stein & Johnson, Amarillo, for appellees.

Before DODSON, BOYD and PIRTLE, JJ.

PIRTLE, Justice.

This is a case involving the construction of an express covenant to protect against drainage contained in an oil and gas lease. Appellants Wenona Good, individually and as independent executrix of the estate of Arnold A. Good, Deceased, and others (collectively "Mrs. Good") sued appellees TXO Production Corporation and Apcot Finadel Joint Venture (collectively "TXO") for damages for breach of the express covenant. TXO then filed a third-party action against Natural Gas Anadarko, Inc. ("NGA") seeking contribution and indemnity for any damages occurring after July 1, 1983, the date TXO assigned the lease to NGA. The trial court granted NGA's motion for summary judgment in the third-party action, and NGA was dismissed from the lawsuit. Based upon an adverse jury verdict, a take-nothing judgment was entered against Mrs. Good.

By a single point of error, Mrs. Good contends that it was reversible error for the trial court to submit special issue number one and the corresponding instructions, because both required a finding of "substantial drainage" rather than mere "drainage". Because we conclude that the instructions and special issues were correctly submitted, we will affirm the judgment of the trial court.

The oil and gas lease in question (the "Good lease") was executed October 18, 1978, for a primary term of five years, covering all of Section 229, Block 43, H & TC Ry. Co. Survey, Ochiltree County, Texas. The lease evidences extensive negotiations between the parties, including numerous line-outs on the printed form and a lengthy typewritten addendum. Paragraph 6 of the printed portion of the lease, which contains the express covenant to protect against drainage, provides as follows:

6.  ... In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land

and ~~within two hundred feet (200 feet) of and~~ draining the leased premises, lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances. ~~The judgment of the lessee when not fraudulently exercised in carrying out the purposes of the lease shall be conclusive.~~ (The portions marked were lined-out in the original document.) This language is relatively common in Texas lease forms, and similar language has been quoted in a number of Texas cases.[1]

Mrs. Good alleged that two gas wells, the McKeel No. 1 and the Crum No. 2, had been drilled and completed on adjacent sections and had drained the Upper Morrow formation on her lease between September 1, 1981, and July 1, 1983, the date TXO assigned the lease to NGA. The McKeel No. 1 was completed September 1, 1981, in the NE/4 of Section 213, immediately southwest of the Good lease. As of the date of trial, the McKeel No. 1 had produced over 1.7 BCF of gas from the Upper Morrow formation. The Crum No. 2 was completed in April 1982 in the NW/4 of Section 212, immediately south of the Good lease. As of the date of trial, the Crum No. 2 had produced over 1.5 BCF of gas from the Upper Morrow formation. Mrs. Good alleged that a reasonably prudent operator would have drilled an offset well in the SW/4 of Section 229 no later than October 1981, and that failure to drill the offset was a breach of the express covenant contained in her lease.

The relevant instructions and special issues submitted to the jury by the trial court were as follows:

> In answering Special Issues, you are instructed that a reasonably prudent operator has the duty to prevent *substantial* drainage of gas and condensate from Section 229 if a reasonably prudent operator would drill a well to prevent such drainage. However, such a duty arises only if a reasonably prudent operator with knowledge of the risks involved would protect from such drainage by drilling a well and also unless [sic] a reasonably prudent operator would have a reasonable expectation of producing gas and condensate in paying quantities. The term "paying quantities" as used in this charge, means production of gas and condensate in such quantities as would give the operator a reasonable profit after deducting the costs of drilling, completing, operating, taxes and marketing. You are likewise charged that the term "reasonably prudent operator" as used in this charge, means an operator of ordinary prudence, that is having neither the highest or [sic] the lowest prudence, but on the contrary an operator of average prudence and intelligence, acting with ordinary diligence under the same or similar circumstances.

### SPECIAL ISSUE NO. 1

> Do you find from a preponderance of the evidence that *substantial* drainage was occurring from the Upper Morrow formation in the southwest quarter of Section 229 between September 1, 1981, and July 1, 1983?
> ANSWER "YES" OR "NO"
> ANSWER: NO
> If you have answered Special Issue No. 1, "Yes", and only in that event, proceed to answer the following Special Issue; otherwise do not answer.

### SPECIAL ISSUE NO. 2

> Do you find from a preponderance of the evidence that TXO Production Corporation failed to act as a reasonably prudent operator by not drilling a well to the Upper Morrow formation at a location 467 feet from the south line and 467 feet from the west line in section 229 between September 1, 1981, and July 1, 1983?
> ANSWER "YES" OR "NO"

1. *E.g., Shell Oil Co. v. Stansbury,* 401 S.W.2d 623, 629–30 (Tex.Civ.App.—Beaumont 1966), *writ ref'd n.r.e. per curiam,* 410 S.W.2d 187 (Tex.1967); *Coats v. Brown,* 301 S.W.2d 932, 934–35 (Tex.Civ.App.—Texarkana 1957, no writ); *Hutchins v. Humble Oil & Refining Co.,* 161 S.W.2d 571, 573 (Tex.Civ.App.—Galveston 1942, writ ref'd w.o.m.); *Magnolia Petroleum Co. v. Page,* 141 S.W.2d 691, 693 (Tex.Civ.App.—San Antonio 1940, writ ref'd).

ANSWER: [Not Answered] (emphasis added).

Mrs. Good contends that the adjective "substantial" forced her to carry a greater burden of proof than required by the express covenant contained in her lease. She further contends that the requirement of substantial drainage is a requirement particular to the implied covenant to protect against drainage,[2] and that it is inappropriate in the context of a suit for breach of an express covenant.

She claims that the express covenant to protect against drainage contained in her lease precludes inquiry into the existence of substantial drainage. Citing *Magnolia Petroleum Co. v. Page*, 141 S.W.2d 691, 693 (Tex.Civ.App.—San Antonio 1940, writ ref'd), she takes the position that "when expressed covenants appear in the lease, implied covenants disappear." Reasoning that because the implied covenant to protect against drainage was preempted by the express covenant contained in the lease, she concludes that the trial court erred by applying the implied covenant standard of substantial drainage.

While we recognize the line of cases dealing with the pre-emption of implied covenants, we believe they are inapposite to the case at bar. We are called upon to construe an express covenant, not to imply a new one concerning matters not addressed by the parties. In doing so, our task is to seek the intention of the parties as expressed in the lease. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726 (Tex.1981). In the absence of ambiguity, the search for the intent of the parties will be limited to the four corners of the document. *Rutherford v. Randal*, 593 S.W.2d 949 (Tex.1980). We find that there is no ambiguity, and proceed to construe the express covenant.

■ In construing the terms of the express covenant to determine the intent of the parties, we note that the parties expressly adopted the reasonably prudent operator standard. By incorporating this standard of conduct, the parties evidenced their intent to adopt the reasonably prudent operator standard of protection. The express covenant to protect against drainage does not call for a different standard of conduct than that required under the implied covenant. Therefore, we are of the opinion that the express covenant at issue provides the same standard of protection as that required under the implied covenant to protect against drainage. That standard is a standard of reasonable diligence, requiring substantial drainage before an obligation to drill an offset well to protect against drainage is imposed. *Amoco Production Co. v. Alexander*, 622 S.W.2d 563, 568 (Tex.1981); *Shell Oil Co. v. Stansbury*, 410 S.W.2d 187, 188 (Tex.1966).

■ Accordingly, we conclude that the reasonably prudent operator standard includes an independent requirement that drainage be substantial before a lessor can maintain a cause of action for breach of a protection covenant, express or implied.

We believe the case of *Texas Pacific Coal & Oil Co. v. Barker*, 117 Tex. 418, 6 S.W.2d 1031 (1928) supports our conclusion. In that case, the lease expressly provided that the lessee would provide "due protection" against drainage caused by wells on adjacent property. The lease, however, was silent as to how the protection would be given or what the standard of care would be. The Supreme Court held that where a lease was silent as to the degree of due protection owed by the lessee, the agreement of the parties would be construed to require reasonable protection and care. Quoting from *Summers' Oil & Gas*, § 132, p. 424,[3] the court said:

Whenever a duty to perform an act or series of acts is fixed by contract or implication of law, and the time, manner, and extent of performance is not fixed, the law implies that such act or acts shall

---

**2.** We note that the elements of a cause of action for breach of the implied covenant to protect against drainage in Texas are (1) that substantial drainage has taken place on the leasehold, and (2) that a reasonably prudent operator would have acted to prevent the substantial drainage. *Amoco Production Co. v. Alexander*, 622 S.W.2d 563, 568 (Tex.1981).

**3.** Now found at W.L. Summers, 2 Law of Oil and Gas § 411 at 596–97 (3d ed. 1959).

be performed within a reasonable time and with reasonable diligence. Where, therefore, oil and gas leases do not state the time, manner, and extent of performance of express and implied duties to test, develop, and protect the land, the courts have of necessity tested the lessee's performance by the standards of reasonable time and reasonable diligence. *Texas Pacific,* 6 S.W.2d at 1034–1035.

Having determined that TXO's conduct is to be judged by the reasonably prudent operator standard, and that, therefore, it was not required to drill an offset well to protect against drainage in the absence of substantial drainage, we find no error in the trial court's submission of special issue number one and the corresponding instructions. Accordingly, Mrs. Good's point of error is overruled. In view of our disposition of Mrs. Good's point of error, we do not reach the cross points raised by TXO. The judgment of the trial court is affirmed.