ELLIOTT F. COWDEN v. BRODERICK & CALVERT, INCORPORATED, ET AL.

No. 7348.   Decided April 6, 1938.
Rehearing overruled May 11, 1938.
(114 S. W., 2d Series, 1166.)

*Whitaker & Perkins,* of Midland, and *Bryan, Stone, Wade &. Agerton,* of Fort Worth, for plaintiff in error.

The petition in the trial court stated a good cause of action with respect to the lease for oil and gas terminating by virtue of its terms as to said 160 acres on June 23, 1934, and was not subject to a general demurrer. Moore v. West, 239 S. W. 710; Flato v. Weil, 4 S. W. (2d) 992; Ehlinger v. Clark, 117 Texas 547, 8 S. W. (2d) 666; 10 Tex. Jur. 282.

*A. W. Walker, Jr.,* of Austin, *Frank Stubbeman,* of Midland, *Slay & Simon,* of Fort Worth, for defendant in error.

The trial court correctly sustained a demurrer to so much of the plaintiff's amended petition as undertook to allege a cause of action to have the oil and gas lease owned by the defendants declared terminated and forfeited because of the failure of the lessee to commence a second well or to pay delay rentals on or before June 23, 1934. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas 160, 254 S. W. 290; Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 19 S. W. (2d) 27; Gulf Production v. Kishi, 129 Texas 487, 103 S. W. (2d) 965.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

Plaintiff in error in his suit against defendants in error seeks judgment for the termination of an oil and gas lease in so far as it affects 160 acres of land in Ector County, and, in alternative counts, for damages on account of failure to develop the land for oil and gas with reasonable diligence or in good faith. General demurrer to the petition was sustained by the trial court and the suit dismissed. The Court of Civil Appeals reversed the trial court's judgment and remanded the cause, holding that one of the counts of the petition stated a cause of action for recovery of damages. 108 S. W. (2d) 562. Plaintiff in error Cowden, the owner of 2429.5 acres of land in Ector County, and O. C. Harper executed on June 23, 1933, a written contract whereby Cowden agreed to execute and did execute to Harper an oil and gas lease of even date with the contract and covering said land and placed the lease with a copy of the contract in escrow in a bank to be delivered to Harper upon his performance of the covenants and agreements that the contract provided should be performed by him "as consideration for and in payment for the said lease."

Such covenants and agreements were in substance that Harper would at his own cost and expense drill a well for oil and gas at some location on a section numbered 25 included in the lease, actual drilling to be begun on or before August 1, 1933, and the well drilled with diligence to a depth of 4500 feet or until oil or gas in commercially paying quantities should be produced or until sulphur water in the "Big Lime" should be reached. The contract provided that upon the completion of the well, either as a producer or as a nonproducer, the oil and gas lease should be delivered to Harper.

It is alleged in the petition that defendants in error as assignees of Harper acquired all of his rights under the contract and under the lease in and to a certain 160 acres of the said section 25 and in due time drilled, completed and equipped a well on the 160 acre tract; that the well was completed on October 25, 1933, as a commercial producer of oil and has since that time continued to produce an average of about 60 barrels of oil per day, which has been sold at an average price of 75¢ per barrel; and that upon the completion of the well the lease was delivered to Harper and his assigns by the escrow agent.

The oil and gas lease is in an often used form and contains no unusual provision except that relating to development and hereinafter quoted. It is dated June 23, 1933, requires the payment of the usual one-eighth royalties and remains in force "for a term of five years from this date and as long thereafter as oil, gas or casinghead gas, or either of them, is produced from said land by lessee in commercial quantities." The privilege of assigning the lease as to part or parts of the land is given. It is an "unless" lease, containing the following paragraphs with respect to commencing a well or paying delay rentals:

"If no well be commenced on said land on or before the 23rd day of June, 1934, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank at Midland, Texas, or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of Twelve Hundred Fourteen & 75/100 ($1214.75) Dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but

also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land, before the next ensuing date for the payment of rentals thereafter, this lease shall terminate as to both parties, unless the lessee on or before such next ensuing date for the payments of rentals shall resume the payments of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payments of rentals, as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments."

The provisions of the lease as to offset wells and development generally are:

"In the event of production on adjoining land, the lessee agrees to drill proper and necessary offsets along property lines; lessor agrees that all other development shall be at the discretion of the lessee."

The first count of the petition, in addition to the allegations as to the drilling and completion of a producing oil well on the 160 acre tract and the delivery of the lease, states the substance of the contract and of the lease, making attached copies of them parts of the petition as if copied therein, and alleges further that after the delivery of the lease its provisions and stipulations alone constituted and evidenced the mutual rights and obligations of the lessor on the one hand and of the lessee and his assigns on the other; that one of the obligations devolving upon the lessee and his assigns, in so far as the lease applies to the 160 acre tract, was either to commence a well on or before June 23, 1934, on some portion of the 2429.5 acres covered by the lease or on or before said date to pay or tender to the lessor one year's delay rental in the sum of fifty cents per acre; that no well, provided for in the lease itself, was commenced on any part of the land covered by the lease on or before June 23, 1934, and defendants did not pay or tender to plaintiff fifty cents per acre delay rental on their 160 acres; and that the lease as to the said 160 acres terminated.

The contention of plaintiff in error is, as stated in his brief, that "the drilling of the well under the terms of the escrow agreement or contract was the bonus or consideration paid for the oil and gas lease, and that the drilling of same did not re-

lieve the defendants from drilling another well or paying delay rentals in order to keep the lease from terminating according to its terms."

Defendants in error take the position that the drilling and completion of the well as a paying producer before June 23, 1934, constituted a compliance with the terms of the lease as to the commencing of a well or the paying of delay rentals on or before June 23, 1934, and prevented termination on that date, although the well was drilled, as required by the escrow contract, before the lease was delivered to the lessee.

Looking to the language of the lease and the facts alleged as to the drilling of the well, we find that the contingency upon the happening of which the estate may come to an end before the regular end of the term is thus stated: "If no well be commenced on said lease on or before the 23rd day of June, 1934, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender" the stipulated rental; that no rentals were paid but that a well was in fact commenced on the land by the assignees of the lessee and completed as a paying producer on October 25, 1933. The lease does not provide that the well must be commenced at any exact time or that it must be commenced after the lease is delivered out of escrow, or that the well to be drilled to prevent termination on June 23, 1934, must be a second well or a well in addition to that required by the escrow contract. Thus it appears that there was a literal compliance with the above quoted terms of the lease.

Plaintiffs in error insist that the escrow contract was a preliminary sales agreement which made the drilling of the well the bonus or the consideration paid for the lease and also a condition precedent to the delivery of the lease, and that the well was drilled under and in compliance with the escrow contract and cannot be considered as having been drilled under or in compliance with the lease. It is argued in this connection that when the condition of the escrow contract was performed and the lease delivered, the escrow contract "became *functus officio*," that the lease thereupon became and was thereafter the final expression of the agreement of the parties, and that performance of the terms or conditions of the lease consists in and must be tested by what was done after its delivery.

1, 2 We do not believe that the escrow contract and performance under it can be so thoroughly divorced from the lease and compliance with its terms. While legal title did not pass to the lessee until the conditions of the escrow agreement were satis-

fied, the lessee had, from the time the lease was placed in escrow and pending performance of the conditions, an equitable title to the leasehold estate or interest. Alworth v. Ellison, 27 S. W. (2d) 639 (application for writ of error refused) ; 17 Tex. Jur., p. 92, Sec. 5; 10 R. C. L., p. 628, Sec. 10. And although there are authorities holding that upon the performance of the conditions for which a deed was placed in escrow the title does not relate back to the time when it was delivered to the escrow agent, except where it is necessary to adopt the fiction of earlier delivery by relation in order to prevent manifest hardship or wrong (10 R. C. L., pp. 640-641, Sec. 21; 1 Devlin on Deeds, (3rd Ed.) pp. 582-584, Sec. 328), the general rule in this state seems to be that, upon performance of the condition and delivery of the deed, the title acquired thereby relates back to the time when the deed was placed in the custody of the escrow agent. Parker v. Spencer, 61 Texas 155, 162; Henry v. Phillips, 105 Texas 459, 151 S. W. 533; Sibley v. Pickens, 273 S. W. 897; Gulley v. Nystel, 233 S. W. 122, 125; 17 Tex. Jur., p. 93, Sec. 5; 31 Tex. Jur., p. 959, Sec. 365. Undoubtedly, as between the parties to the escrow agreement and deed, effect will be given to their intention, evidenced by the instruments, that the deed shall upon performance of the condition take effect from the date of delivery in escrow. 1 Devlin on Deeds, (3rd Ed.) p. 585, Sec. 329. Here such intention is clearly manifested. The escrow agreement is dated and was executed June 23, 1933. It recites that the lease has been executed as of date the 23rd day of June, 1933, and is placed in escrow for delivery upon completion of the well. The lease is dated June 23, 1933, and was executed and acknowledged on that day. Its first sentence recites that it is made and entered into the 23rd day of June, 1933. It presently grants, demises and leases the land to the lessee for the purpose of mining and operating for oil and gas, and in defining the term of the grant it provides that the lease shall remain in force "for a period of five years from this date and as long thereafter" etc. June 23, 1934, a year from the date of the lease, is named as the day on or before which a well must be commenced or rentals paid to prevent termination. Thus the well was commenced and completed at a time when the lessee and his assigns had the equitable title to the leasehold estate and also within the term of the lease as defined by the language of the instrument. And since the title related back to the time of the delivery of the lease in escrow, the well may be considered as having been begun and completed at a time when the legal as well as the equitable title was in the lessee and his assigns. The drilling of the well was not an act wholly apart from the lease

or so foreign to it that the well cannot be considered as drilled under it.

**3** Even if we treat the escrow agreement as a contract separate and distinct from that evidenced by the lease and regard it fully performed and its purpose finally accomplished in the completion of the well, the fact remains that a well was commenced and completed on the leased land before June 23, 1934. That fact is not obliterated by performance of the escrow contract. It constitutes a compliance with the simple condition or limitation contained in the lease that "if no well be commenced on said land on or before the 23rd day of June, 1934, this lease shall terminate" etc. It matters not why the well was drilled, whether because it was required by the escrow contract or as consideration for the lease or for whatever reason.

**4, 5** The true problem is to determine the intention of the parties as to the drilling of a well or wells, whether one or two, for the delivery of the lease out of escrow and for the prevention of the termination of the lease on June 23, 1934, in the absence of payment of delay rental. Since the escrow contract and the lease were executed at the same time and as parts of one transaction, they are, under a well settled rule, to be construed together in ascertaining the intention of the parties. Another rule requires an intention to impose upon a grant a condition or limitation leading to termination of the estate to be plainly and clearly expressed. W. T. Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 522, 19 S. W. (2d) 27; Stevens v. Galveston, H. & S. A. Ry. Co., (Com. App.) 212 S. W. 639, 644; Ryan v. Kent, (Com. App.) 36 S. W. (2d) 1007. Reading the two instruments together, we find no language in either of them indicating an intention that the well, the comencement of which during the first year will prevent termination of the lease at the end of that year, is to be a second well or a well in addition to that required to be drilled by the escrow contract. Both contracts bear the same date, June 23, 1933. Under the escrow contract *a* well is to be commenced on or before August 1, 1933. By the terms of the lease the estate terminates unless *a* well is commenced on or before June 23, 1934, the end of the first year of the primary term. To commence a well after June 23, 1933, and on or before August 1, 1933, is to commence a well within the first year of the term of the lease. Such construction is not unreasonable and it avoids the termination of the estate for failure to drill a second well (or pay rental).

From a practical viewpoint we believe it plainly appears from the two instruments and the facts alleged in the petition

that the parties intended the drilling of one well to serve the double purpose of compliance with the escrow agreement and fulfillment of the "unless" clause of the lease. The fact that the drilling of the well was the consideration or bonus for the lease shows that the lessor was interested primarily in securing the testing of his land for oil and gas. He executed an ordinary "unless" lease under which the lessee is not obligated to drill a well but may keep the lease in effect either by commencing a well or by paying rentals or may permit the lease to terminate. He desired, however, to be assured of the drilling of a first or test well during the first year of the term of the lease and to that end he adopted the simple and often used means of placing the lease in escrow for delivery only after that well was completed. In this way he required the lessee to drill the well under the lease instead of leaving its drilling to the lessee's option.

6 There is no real inconsistency between the provisions of the escrow contract and the "unless" clause of the lease when the two instruments are construed to mean that the well referred to in the "unless" clause may be the same well as that required to be drilled by the escrow contract. One well may without inconsistency serve two purposes, namely, to comply with the obligation of the escrow contract and to prevent termination of the lease at the end of its first year. The time and manner of drilling the well required to be drilled as a condition precedent to delivery of the lease are prescribed by the escrow agreement, while the nature of the estate granted, its conditions and limitations, and the rights and obligations of the lessor and of the lessee are defined by the terms of the lease. The lease remains an "unless" lease although the first well is drilled under compulsion of the escrow agreement. It is to be noted in this connection that placing the lease in escrow pending completion of the well did not render meaningless that part of the "unless" clause with respect to the payment of delay rentals at the end of the first year. This is by reason of the provision made and hereinbefore quoted for the event of the completion of the first well as a dry hole. If the well had been completed on October 25, 1933, as a dry hole instead of as a producer, it would have been necessary for the lessee or his assigns, in order to prevent termination, to commence another well before June 23, 1934, or to pay rentals on or before that date.

It is our opinion, therefore, that the trial court did not err in sustaining the general demurrer as applied to the first count of the petition, wherein the plaintiff seeks judgment for the termination of the oil and gas lease, in so far as it affects the

160 acre tract, on account of the failure of the lessee and his assigns to commence a second well on the land covered by the lease and the failure of defendants to pay rental on the 160 acres on or before June 23, 1934.

The trial court did not err in sustaining the general demurrer to the second count of the petition, in which plaintiff in error sues for damages on account of failure of defendants in error, after the discovery of oil in paying quantities upon the 160 acre tract, to continue reasonably to develop the said tract by drilling and equipping other wells. The implied obligation to develop with reasonable diligence would have arisen after the discovery of oil in paying quantities in the first well if the parties to the lease had not contracted with respect to the development of the leased premises. Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Texas 439, 6 S. W. (2d) 1039, 60 A. L. R. 890; Gulf Production Co. v. Kishi, 129 Texas 487, 103 S. W. (2d) 965. The lease is not silent upon the subject of development. It requires the lessee in the event of production on adjoining land to drill proper and necessary offsets and then provides: "Lessor agrees that all other development shall be at the discretion of the lessee." The judgment or discretion of the lessee exercised in good faith is not the same measure for the lessee's obligation in the matter of development as the reasonable development required by the implied covenant which arises in the absence of express stipulation as to development. Texas Pacific Coal & Oil Co. v. Barker, 117 Texas 418, 432, 6 S. W. (2d) 1031, 60 A. L. R. 936.

We agree with the decision of the Court of Civil Appeals that the trial court erred in sustaining the general demurrer to the third count of plaintiff's petition. It is there alleged in substance that the defendants after the discovery of oil did not in good faith exercise their discretion in further development of the land but abused their discretion and refused to drill additional wells; that had they acted in good faith they would have drilled other wells, and plaintiff would have received additional royalties therefrom; and that by such failure of defendants to act in good faith and by such abuse of discretion plaintiff has been damaged.

7   The lessor, in agreeing that all other development should be at the discretion of the lessee, did not leave the development to the complete option of the lessee and his assigns, to develop or not to develop at their pleasure. "At the discretion of" may under some circumstances mean "at the option of," but usually it does not. Discretion differs from uncontrolled will. It is thus

defined in The Steamship Styria v. Morgan, 186 U. S. 1, 46 L. Ed. 1027, 1033, 22 Sup. Ct. 731: "Discretion means the equitable decision of what is just and proper under the circumstances." In Paquette v. City of Fall River, 278 Mass. 172, 179 N. E. 588, the court in construing a law authorizing a school committee to employ a teacher "to serve at its discretion" held that the discretion given was "freedom to act according to honest judgment" and that discretion as used in the law was "not a word for arbitrary will or inconsiderate action." See also Ridgway v. City of Fort Worth, 243 S. W. 740; Senter v. Dixie Motor Coach Corporation, 128 Texas 389, 97 S. W. (2d) 945; Dixie Oil Co. v. McBurnett, (Com. App.) 6 S. W. (2d) 83. A construction of the lease that would leave further development to the option or uncontrolled will of the lessee and his assigns should be avoided, because it would tend to prevent the accomplishment of the purpose for which the lease was made, that is the production of oil and gas with payment of royalty to the lessor.

The allegations in the third count are wanting in particularity and consist in part of conclusions. We believe they are sufficient against general demurrer, when every reasonable intendment is indulged in favor of the sufficiency of the pleading and when they are aided, as they may be, by such essential facts as may be fairly inferred from the facts alleged. Houston North Shore Ry. Co. v. Tyrrell, 128 Texas 248, 98 S. W. (2d) 786; Humphreys Oil Co. v. Liles, (Com. App.) 277 S. W. 100; Martinez v. Gutierrez, (Com. App.) 66 S. W. (2d) 678.

Because of the error of the trial court in sustaining the general demurrer to the third count of the petition, the judgment of the Court of Civil Appeals reversing the judgment of the district court and remanding the cause is affirmed.

Opinion adopted by the Supreme Court April 6, 1938.

Rehearing overruled May 11, 1938.