Harlow H. OBERBILLIG, as Administrator of the Estate of J. J. Oberbillig, Appellant,

v.

BRADLEY MINING COMPANY, Appellee.

No. 20620.

United States Court of Appeals Ninth Circuit.

Jan. 31, 1967.

------

Dale Clemons, Clemons, Skiles & Green, Boise, Idaho, for appellant.

Eugene Thomas, of Moffatt, Thomas, Barrett & Blanton, Boise, Idaho, George W. Wilson, San Francisco, Cal., for appellee.

Before CHAMBERS, Chief Judge, and JOHNSEN * and MERRILL, Circuit Judges.

JOHNSEN, Circuit Judge.

The appeal is from a summary judgment for the defendant in a diversity suit seeking (a) damages on account of defendant's discontinuance of the operation of some mining claims and plaintiff's loss of royalties as a result thereof, and (b) a decree of abandonment, forfeiture and reconveyance on the basis of the discontinuance and defendant's refusal of plaintiff's request to resume present operation of them.[1]

About thirty patented lode and placer claims, located in the Yellow Pine Mining District in Valley County, Idaho, are involved. They had been conveyed by plaintiff's predecessor in interest (United Mercury Mines Co.) to defendant (Bradley Mining Co.) by instrument dated December 31, 1941. At the time of the conveyance twenty-six of them had been patented and four or five more were thereafter patented by defendant, out of a substantial number of unpatented locations which were included in the conveyance. All of the unpatented claims, however, except the four or five subsequently patented, as mentioned, had through the period from 1955 to 1963 been deeded back by defendant.[2]

The judgment made dismissal of the action with prejudice on the grounds (1) that under the conveyance and the agreement for royalty payments defendant [in the language of the court] "had discretion to terminate the mining operation, and not to resume the same"; (2) that the discontinuance of operation and the loss of royalties complained of did not give rise to a claim upon which plaintiff could seek damages or reconveyance, and [in the language of the court] "plaintiff cannot state any claim under said conveyance (and) royalty agreement * * * upon which relief can be granted * * * because of the failure of (defendant) to mine, mill or produce minerals, ores, metals or values from the premises thereby conveyed"; and (3) that even if discontinuance of the operation had been a violation of the terms and conditions of the conveyance and agreement for royalty payments such as to be able to give rise to a right to damages in breach, the cause of action therefor would have accrued more than five years prior to the institution of the suit and hence was barred by the five-year limitation of § 5–216 of the Idaho Code for bringing "an action upon any contract, obligation or liability founded upon an instrument in writing".

The first two grounds were based primarily upon a specific provision in the

* Harvey M. Johnsen, of the Eighth Circuit, sitting by designation.

1. Defendant is of course the appellee here and plaintiff the appellant.

2. This included reconveyance of some other unpatented claims on which the instrument of conveyance had given defendant an option that it apparently exercised. The circumstances of making all the reconveyances referred to do not appear in the record, nor do they seem to have any immediate relevance to the questions here dealt with, since the demand for damages is related to the failure to operate the patented claims and the demand for reconveyance is similarly directed at these claims.

instrument of conveyance that "the time, amount, extent and manner of conducting mining operations and development work upon or in the above-described mining claims shall be in the sole discretion of Bradley, its successors, and assigns, and * * * the failure of Bradley to mine shall not be held to be a condition subsequent defeating the conveyance made hereby".

Plaintiff contends, however, that this provision is required to be read in relation to the fact that there was no consideration by the grantee for the conveyance except such obligation as it assumed for royalty payments. The consideration for the conveyance was recited to be and made to consist of an agreement by Bradley to make payment to the grantor of "five percent (5%) on all net smelter returns * * * upon and for all minerals, ores, metals or values of every kind and character, mined, extracted or taken from the * * * mining claims or any part thereof", with such payments to be made "when any net smelter, mint or other returns are received by Bradley".

The payments were to continue on all such net returns received by Bradley through a period of 999 years "and so long thereafter as minerals, ores or values shall be extracted, mined or taken from the * * * property". These provisions were declared to be "covenants running with the lands, grounds, minerals, ores, values, and mining claims * * * conveyed * * * and shall be binding upon Bradley, its successors and assigns forever". And as security against failure by Bradley "to pay any royalties reserved herein when the same shall become due", the instrument created a mortgage lien upon the property in favor of United for the payments.

■ It will be noted that in the last provision quoted the expression "royalties reserved herein" is used, and it occurs in several other places throughout the instrument. It seems clear, however, that this use was made simply in general characterization and not in purported signification of any reservation or exception of an actual property interest in the claims or minerals as such. The conveyance specifically provided that "full ownership * * * shall be vested in Bradley and * * * United shall have no interest in fee in or to said properties". The situation therefore was entitled to be dealt with by the court on the basis that Bradley had been granted full fee ownership of the mining properties and not a limited title or a leasehold estate.

But even though Bradley thus held the entire title and United was without any retained estate in the property itself, this does not effect disposition of plaintiff's further contention that since the provision for payment of royalties was the only consideration for the conveyance, Bradley became subject to an implied obligation to continue operation of the patented claims in order to make the *quid pro quo* have legal reality.

■ A grantee of mining property, where the sole consideration for the conveyance is to be royalty payments therefrom, is regarded as generally being subject to an implied obligation of due diligence in relation to the elements of the particular situation as to engaging in or continuing a working of the property. See generally 58 C.J.S. Mines and Minerals § 158; 60 A.L.R. 901, Annotation; 74 A.L.R.2d 721, Annotation. The implying of such an obligation, however, must be not only harmonious with the express provisions of the contract but also necessary to provide operativeness for the apparent intention of the parties and effectuation of the inherent object of the transaction. Cf. Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039; Grass v. Big Creek Development Co., 75 W.Va. 719, 84 S.E. 750, L.R.A.1915E, 1057.

■ But sale of a mine can of course be made, with royalty payments representing the only consideration therefor although without room for any implied obligation to exist as to working or operating the property from the instrument itself having expressly fixed the

grantee's responsibility in this respect —and this regardless of how imprudent the provision as to working or operating may impress as being against the grantor. Cf. Doehring v. Gulf Production Co., Tex.Civ.App., 8 S.W.2d 723.

■ Here, as indicated, the conveyance contained express provision that the time, the amount, the extent, and the manner of conducting mining operations in relation to the claims and properties were to be matters "in the sole discretion of Bradley, its successors, and assigns" and "the failure of Bradley to mine" was to be unable to create any defeasance as to the property. Plaintiff therefore could not claim breach from Bradley's discontinuance of the mining operation or the length of time that the lack of operation had existed, upon the basis of such obligation as to diligence as might have been implied if the instrument had not contained express provision as to Bradley's responsibility. Any claim of breach which plaintiff could make as to the discontinuance and lack of operation involved could only be a matter that would be violative of the responsibility legally signified by the term "the sole discretion of Bradley".

That term gave Bradley a power of decision as to working and operating the property which would represent a permissible judgment on the aspects of the situation as they existed at any particular time or period of time. It did not, of course, give Bradley the right to make decision as to its own action upon "arbitrary will or unstable caprice", Goodman v. Goodman, 68 Nev. 484, 236 P.2d 305, 306, 307, for neither "sole discretion" nor "absolute discretion" has ever been held to have that meaning.

■ Inherent in the grant of a discretion—whether it be one of general, sole, or absolute discretion—whose exercise is capable of effect upon the grantor, is the responsibility of acting "in good faith". Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 1171, 117 A.L.R. 61. Thus good faith in such a situation is in effect making decision "upon attendant, pertinent circumstances", in permissible judgment. In re Shelley, 332 Pa. 358, 2 A.2d 809, 813. But if the discretion exercised by Bradley came within these standards, there could be no breach from discontinuance of work or operation so long as the conditions underlying the decision remained and so long as the discontinuance was not an attempt to repudiate the obligation of the conveyance.

Bradley here recognizes the obligation which will exist against it for the payment of royalties when the property is again operated. In this connection it points out that the conveyance related to minerals which could not be lost or wasted, and that the parties manifestly contemplated that periods of inactivity such as that which is involved might come to exist in the situation, because they provided that the agreement to pay royalties should remain in effect for a period of some 999 years. Bradley also calls attention to the fact that following the conveyance the property was continuously operated through World War II and the Korean War, and that during that period of time royalties were received by the grantor in an amount of approximately one and one-half million dollars.

With the suit being predicated upon claim of breach of the implied obligation as to diligence which plaintiff wrongly regarded as existing as to Bradley's responsibility, and with there being no request even here that it be permitted to be related to such responsibility as Bradley could have under the provision in the instrument for discretion, the denial made of the recovery sought and the dismissal made of the complaint are entitled to stand insofar as this basis is concerned, but with the door not however being thereby closed to any right which might exist or come to exist to assert and show that Bradley's failure to re-engage in operation was no longer capable of representing a good-faith judgment.

■ The judgment entered by the trial court appears to be intended and

to have the effect of closing the door to any such right, in that the dismissal was one with prejudice, coupled with a holding that plaintiff could not state any claim under the conveyance and royalty agreement upon which relief could be granted for Bradley's failure to mine, work or operate the property. The judgment will accordingly be directed to be modified to make the dismissal one without prejudice to the right of plaintiff to assert any claim which might exist or come to exist from Bradley's failure to re-engage in operation of the property being no longer capable of representing a good-faith judgment. Any damages which might be sought to be recovered at any time upon this basis would of course be limited under § 5–216 of the Idaho Code to a period of five years preceding the suit.[3]

Judgment affirmed as directed to be modified.

---

3. We do not here deal with any question of abandonment and forfeiture which could perhaps arise out of a repudiation by Bradley of there being any obligation remaining to continue to exercise good-faith judgment as to the situation.

Also, we do not engage in any discussion of a contention of res judicata made by defendant since, as the trial court held, it clearly is without any merit on its face.