

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

August 17, 1967

Honorable George A. Day
County Attorney
Brown County
308B North Broadway
Brownwood, Texas

Dear Mr. Day:

Opinion No. M-129

Re: Whether a Municipal Gas
Corporation, created as
a non-profit corporation
to serve a municipality,
is exempt from city, State,
county and school taxes.

We quote the following excerpt from your letter requesting the opinion of this Office on the above captioned matter:

"The Brady, Texas, Municipal Gas Corporation has claimed exemption from ad valorem taxation for county, city and school purposes. The question to be determined is whether or not from and after January 1st, 1967, the natural gas utility serving the City of Brady, Texas, and its environs will be subject to ad valorem taxation by Brown County, Texas, and for city and school purposes?

"On September 24, 1965, the City Council of the City of Brady, Texas, adopted a resolution requesting five individuals to act as initial directors of a corporation to be established (under the Texas Non-Profit Corporation Act) for the purpose of acquiring the existing natural gas utility system operating within the City of Brady and its environs.

"The Corporation was established under the name 'BRADY, TEXAS, MUNICIPAL GAS CORPORATION.' The Articles of Incorporation were filed in the office of the Secretary of State on November 12, 1965. The Articles read in part as follows:

"'The purpose or purposes for which the corporation is organized is to promote the public interests of the City of Brady, Texas, by

- 595 -

constructing, acquiring, owning, leasing and
operating municipal natural gas utility facili-
ties in behalf of and for the benefit of the
City of Brady, Texas, and its inhabitants.
. . . All properties of the corporation shall
be for the use and benefit of the public and
no part of the income or revenues of the cor-
poration shall ever be paid to or inure to the
benefit of any director or officer of the cor-
poration except for reimbursement of actual ex-
penses incurred in connection with the business
affairs of the corporation. . . . Nothing here-
in shall prohibit the employment of a general
manager in accordance with the provisions of
Article 1396-2.24 of the Texas Non-Profit Cor-
poration Act. Upon dissolution or liquidation
of the corporation (after satisfaction of all
debts and claims) /sic7 shall be distributed,
transferred and conveyed to or for the benefit
of the City of Brady, Texas.'

"A franchise has been granted to the Cor-
poration for the use of public streets, alleys,
public grounds, etc. by the Corporation. The
franchise contains a provision whereby at any
time the City may purchase the properties of the
Corporation by paying the indebtedness of the Cor-
poration in the manner prescribed. This pro-
vision is intended to provide a procedure where-
by the City may acquire full legal and equitable
title to the properties at any time it desires
to do so. . . . The franchise with the City pro-
vides for certain payments to be made the City
in lieu of all other taxes. . . .

"The phrasing of this portion of the fran-
chise is attempted compliance with Article 1038,
V.A.T.C.S. which reads as follows:

"'The City Council may, by ordinance, pro-
vide for the exemption from taxation of such
property as they may deem just and proper.'

"The Indenture of Mortgage and Deed of
Trust to be executed by and between the Corpo-
ration and the Mercantile National Bank at

> Dallas, Dallas, Texas, Trustee, contains sever-
> al provisions relating to acquisition of the
> properties by the City . . ."

The company, prior to the final payment of the bonds, may assign or convey all or part of the System and or part of the Trust Estate to the City upon the terms and conditions expressed in the indenture of mortgage and deed of trust. The rights of the City are limited should such a conveyance occur, until the time the outstanding indebtedness (secured by the indenture) is retired. Furthermore, all obligations assumed by the company would not be affected by any conveyance.

The City during the time bonds, refunding bonds and additional bonds are outstanding has an option to purchase the System, subject to stated terms and conditions.

Unless the City proceeds to purchase the System as provided in the indenture, all covenants of the company shall remain the obligation and responsibility of the company, but in all other respects the City may have such possessory rights as expressed either in the instrument of conveyance or in a contract by and between the company and the City.

When all of the bonds and coupons secured have been paid or redeemed, all of the System and Trust Estate shall revert to the company or the City, if the City is entitled to receive same under the provisions of the indenture.

At page 7 of the brief submitted in connection with your request, the following statement appears:

> "After the Indenture has been executed
> and the bonds authenticated and delivered, it
> is contemplated that the Corporation will make
> a conveyance of properties to the City of Brady
> (in substantially the form attached) as con-
> templated by the provision of the Indenture
> quoted."

We have concluded that under the facts of this case, the property in question is not exempt from ad valorem taxes by virtue of Article XI, Section 9[1] of the Constitution of the

---

1/     Section 9 of Article XI reads, in part, as follows:

State of Texas, which exempts from ad valorem taxes various
political subdivisions of the State. We base our holding on
Texas Turnpike Company v. Dallas County, 153 Tex. 474, 271
S.W.2d 400 (1954).

In Texas Turnpike, the corporations were chartered
under Article 1302, subdivision 61, Vernon's Civil Statutes,
for the purpose of building, operating and maintaining toll
roads within the State of Texas. The corporations based their
claim for exemption on certain provisions of Article 6674v,
Vernon's Civil Statutes. This Article created Texas Turnpike
Authority as a State agency. Their position was that when
certain by-laws of these corporations and certain escrow agree-
ments were considered together, the result was a placing of
taxable title to the property in the State. The court reject-
ed this contention even though the corporations were obligated
to make an irrevocable gift of all of their assets to the State
of Texas and bind themselves to use all of their net income to
retire indebtedness. Upon acquisition of real property, the
corporations were to execute conveyances thereof to the State
of Texas and place same in escrow with an agreement that the
escrow agent deliver the instruments to the Authority upon com-
pliance with the requirements.

At page 402 of the opinion, the Court said:

"Under the foregoing facts is the property
in question 'publicly owned' so as to be exempt
from taxes under Article XI, Section 9 of the
constitution? Public ownership, for tax-exemp-
tion purposes, must grow out of the facts; it
is a legal status, based on facts, that may not
be created or conferred by mere legislative, or

---

1/ (continued)

"The property of counties, cities and towns,
owned and held only for public purposes, such as
public buildings and the sites therefor, fire en-
gines and the furniture thereof, and all property
used, or intended for extinguishing fires, public
grounds and all other property devoted exclusively
to the use and benefit of the public shall be ex-
empt from forced sale and from taxation, . . ."

even contractual, declaration. If the state does not in fact own the taxable title to the property, neither the Legislature by statute, nor the petitioners and the Authority by contract, may make the state the owner thereof by simply saying that it is the owner.

"The petitioners own and will own the legal title to the property acquired and to be acquired. They are, and will be, in possession and control of the property. They have placed, and will place, deeds conveying the legal title to the state in escrow, but the deeds are to be delivered and to take effect only upon certain conditions, some one or more of which may never occur or exist. Under these facts petitioners contend that the state is the owner of the equitable title to the property and that the equitable title is the taxable title. Undoubtedly the equitable title is the taxable title in those situations in which the grantee takes possession under a deed in which a vendor's lien is reserved or under a contract of sale by which the vendee is obligated to pay the purchase price. Taber v. State, 38 Tex.Civ.App. 235, 85 S.W. 835, writ refused; Harvey v. Provident Inv. Co., Tex.Civ. App., 156 S.W. 1127, writ refused; Leonard v. Kendall, Tex.Civ.App., 5 S.W.2d 197, writ dismissed. Undoubtedly, also, this court has said that the grantee in a conveyance held in escrow is the owner of the equitable title to the property conveyed. Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61; Alworth v. Ellison, Tex.Civ.App., 27 S.W.2d 639, writ refused. But in the latter cases taxable ownership was not the issue. Moreover, in such cases delivery of the conveyance by the escrow agent was dependent upon performance of certain conditions by the grantee; the grantee had it within his power to perform the conditions and compel the delivery of the conveyance transferring legal title. That is not true in this case. Here, the right of the state, as grantee, to acquire the deeds and the legal title they convey is entirely dependent upon performance of conditions by the grantors. The state owns

neither the legal nor the equitable title. It holds at most a right to become the owner of the legal title under certain conditions. Its interest in the property is not a vested interest; it is purely contingent. If, instead of the state, another private corporation were the grantee in the deeds, would the grantee's interest in the property be taxable? It would not because the grantee's interest would be purely contingent. Thus it is held that a contingent remainder in property is not a taxable title. Nation v. Green, 188 Ind. 697, 123 N.E. 163. Neither is a possibility of reverter. Mayor and council of City of Gainesville v. Brenau College, 150 Ga. 156, 103 S.E. 164. If the agreements made by petitioners would not create a taxable ownership in a private grantee, it is difficult to see how they could create a tax-exempt ownership in the State of Texas.

"The toll roads proposed by petitioners are mammoth projects which will cost many millions of dollars. If their construction is begun but abandoned, or if bondholders should be compelled to foreclose their liens and take over the properties, or if the methods and procedures of the State Highway Department are not followed in the letting of contracts for construction and maintenance, or if the roads are not constructed and maintained in a manner equal or superior to the standards of the State Highway Commission, or if the roads are not kept in good condition and repair to the satisfaction of the State Highway Commission — in any of these possible situations, the State could not become the owner of the roads under the express provisions of the statute. It is not enough that petitioners' officers and directors assure us that these contingencies will not happen, or even that they have taken all possible steps to guard against their happening; they yet remain possibilities and as long as this is so the state's interest in the property is purely contingent and the taxable ownership is in petitioners."

The holding in Texas Turnpike has been followed in Dickison v. Woodmen of the World Life Ins. Soc., 280 S.W.2d 315, 318 (Tex.Civ.App. 1955, error ref.); Maher v. Lasater, 163 Tex. 356, 354 S.W.2d 923, 925 (1962); and Tarrant County Water Supply Corp. v. Hurst-Euless-Bedford ISD, 391 S.W.2d 162 (Tex.Civ.App. 1965, error ref., n.r.e.). We think the facts in Texas Turnpike and the facts submitted to us are so clearly analogous that further analysis would be superfluous. You are therefore advised that since the City of Brady would not have title to the properties involved, the property in question is not entitled to the exemption accorded by Article XI, Section 9 of the Constitution of Texas.

## SUMMARY

Under submitted facts, a Municipal Gas Corporation, created as a non-profit corporation to serve a municipality, would not be exempt from city, State, county and school district ad valorem taxes by the provisions of Section 9 of Article XI of the Constitution of Texas.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

MMP:ms

Prepared by Marietta McGregor Payne
Assistant Attorney General

APPROVED:
OPINION COMMITTEE
Kerns B. Taylor, Chairman
W. O. Shultz, Co-Chairman
John R. Grace
John Banks
John Duren
Robert Flowers

STAFF LEGAL ASSISTANT
A. J. Carubbi, Jr.