

# NUMBER 13-07-083-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**HIDALGO COUNTY APPRAISAL
DISTRICT,**                                                      **Appellant,**

**v.**

**HIC TEXAS I, L.L.C.,**                                                  **Appellee.**

---

## On appeal from the 370th District Court of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Benavides
### Memorandum Opinion by Justice Yañez

Appellant, Hidalgo County Appraisal District ("the District"), appeals the trial court's

denial of its cross-motion for summary judgment, and the granting of summary judgment

in favor of appellee, HIC Texas I, L.L.C ("HIC"),[1] which resulted in HIC receiving an *ad*

---

[1] HIC Texas I, L.L.C. is a Texas limited liability company; its sole member is Housing Initiatives Corporation IV (HIC). HIC is a non-profit corporation organized as a Community Housing Development

*valorem* property tax exemption for the 2003 tax year and subsequent years. We reverse and render judgment in favor of the District and hold that HIC is not entitled to the tax exemption.

## Background

This dispute centers on whether HIC "owned" certain property—the Keystone Apartments in Weslaco, Texas ("Keystone")—before the end of the 2003 calendar year. On December 29, 2003, 83-Westgate, Ltd. (the seller) executed an Assumption Special Warranty Deed conveying Keystone to HIC. That same day, the deed and related documents[2] were delivered to Edwards Abstract & Title Company, to be held in escrow subject to the terms of an Escrow Agreement executed by the parties. The Escrow Agreement provided for the deed to be released from escrow and delivered to HIC pending written confirmation that the transaction had been approved by state and federal housing authorities.[3] Such approval was eventually received, and the deed was released from escrow and recorded on April 15, 2004.

On January 22, 2004, HIC filed an application for an *ad valorem* tax exemption for the 2003 tax year with the District. Such exemptions are available to Community

Organization (CHDO). HIC belongs to a group of Texas non-profit corporations that own various multi-family-unit properties in Texas. The group's purposes include the provision of affordable housing to low and moderate-income persons. For purpose of clarity, we refer to appellee throughout this opinion as "HIC."

[2] The parties also executed a "Blanket Conveyance, Bill of Sale and Assignment" and a "Certificate of Delivery," attesting to HIC's receipt of the deed and Blanket Conveyance, both dated December 29, 2003.

[3] The Escrow Agreement provides that the escrow agent shall release the documents and record the deed upon written confirmation that the transaction has been approved by "the [U.S.] Department of Housing and Urban Development and the Texas Department of Housing and Community Affairs."

2

Development Housing Organizations (CDHOs), like HIC, that own qualifying property.[4] The District denied the application, and the Hidalgo County Appraisal Review Board upheld the District's decision. HIC brought suit against the District, contesting the denial of the exemption. The parties filed competing motions for summary judgment on the issue of whether HIC established it was entitled to an exemption under section 11.182 of the property tax code for the 2003 tax year.[5]

Without stating the basis for its ruling, the trial court granted HIC's motion for summary judgment and denied the District's cross-motion. The trial court's judgment found that Keystone is exempt from *ad valorem* taxation pursuant to section 11.182 of the property tax code for the 2003 tax year and subsequent years. By two issues, the District contends the trial court erred in (1) granting HIC's motion for summary judgment, and (2) denying its cross-motion for summary judgment.

### Standard of Review and Applicable Law

Here, both HIC and the District filed "traditional" motions for summary judgment.[6] We review the trial court's grant of summary judgment de novo.[7] When, as here, both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court considers the summary-judgment evidence presented by both sides, determines all questions presented, and if it determines

---

[4] *See* TEX. TAX CODE ANN. § 11.182(b), (j) (Vernon 2008).

[5] *See id.*

[6] *See* TEX. R. CIV. P. 166a(c).

[7] *Joe v. Two Thirty Nine J. V.*, 145 S.W.3d 150, 156-57 (Tex. 2004); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.).

3

the trial court erred, renders the judgment the trial court should have rendered.[8]

The admission or exclusion of summary-judgment evidence rests in the sound discretion of the trial court.[9] A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner.[10] A trial court does not abuse its discretion if it decides a matter within its discretion differently than the appellate court would.[11] An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling.[12] Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment.[13] We review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted.[14]

Statutes exempting property from taxation should be strictly construed in favor of taxation.[15] "Statutory exemptions from taxation are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpaying

---

[8] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

[9] *Alaniz v. Hoyt*, 105 S.W.3d 330, 341 (Tex. App.–Corpus Christi 2003, no pet.).

[10] *Id.*

[11] *Id.*

[12] *See Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

[13] *See id.*; TEX. R. APP. P. 44.1(a)(1).

[14] *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007).

[15] *Am. Hous. Found. v. Calhoun County Appraisal Dist.*, 198 S.W.3d 816, 819 (Tex. App.–Corpus Christi 2006, pet. denied) (citing *N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991)).

businesses and individuals rather than placing the burden on all taxpayers equally."[16]

"Accordingly, the burden of proof of clearly showing that the organization falls within the

statutory exception is on a claimant."[17]

Section 11.182 of the property tax code provides, in pertinent part:

(b) An organization is entitled to an exemption from taxation of improved or unimproved real property *it owns* if the organization:

(1) is organized as a community housing development organization;

(2) meets the requirements of a charitable organization provided by Sections 11.18(e) and (f);

(3) *owns the property* for the purpose of building or repairing housing on the property to sell without profit to a low-income or moderate-income individual or family satisfying the organization's eligibility requirements or to rent without profit to such an individual or family; and

(4) engages exclusively in the building, repair, and sale or rental of housing as described by Subdivision (3) and related activities.[18]

Conveyance by deed requires delivery of the deed.[19] Delivery of a deed has two

elements: (1) the grantor must place the deed within the control of the grantee (2) with the

intention that the instrument become operative as a conveyance.[20] The question of

delivery of the deed is controlled by the intent of the grantor, and it is determined by

---

[16] *Harris County Appraisal Dist. v. Primrose Houston 7 Hous., L.P.*, 238 S.W.3d 782, 786 (Tex. App.–Houston [1st Dist.] 2007, pet. filed) (citing *N. Alamo*, 804 S.W.2d at 899).

[17] *Id.* (citing *N. Alamo*, 804 S.W.2d at 899).

[18] *See* TEX. TAX CODE ANN. § 11.182(b) (emphasis added).

[19] TEX. PROP. CODE ANN. § 5.021 (Vernon 2004); *Noell v. Crow-Billingsley Air Park Ltd. P'ship*, 233 S.W.3d 408, 415 (Tex. App.–Dallas 2007, pet. denied).

[20] *Noell*, 233 S.W.3d at 415.

examining all the facts and circumstances preceding, attending, and following the execution of the instrument.[21] Recording a deed is not necessary to pass title; an unrecorded deed is binding on the parties to the conveyance.[22]

Texas courts hold that when a grantor executes an escrow agreement and deposits the subject matter into escrow, he retains legal title to the subject matter, with equitable title passing to the ultimate grantee.[23] The depositary in escrow, as agent of all the parties, has the absolute duty to carry out the terms of the agreement, including delivering the subject matter when the terms of the escrow have been fulfilled.[24] The ultimate disposition of the subject matter to the grantor or grantee is determined by the terms of the agreement, upon fulfillment of the necessary conditions.[25] Upon performance of the conditions upon which a deed has been placed in escrow and the delivery of the deed, the title acquired relates back to the date when the deed was placed in the escrow.[26] An entity holding "equitable title" to property may be the owner for taxation purposes.[27] Equitable title is defined as the

---

[21] *Id.*

[22] *Id.* at 416-17 (citing TEX. PROP. CODE ANN. § 13.001(b) (Vernon 2004)).

[23] *In re Missionary Baptist Found., Inc.*, 792 F.2d 502, 504 (5th Cir. 1986) (citing *Cowden v. Broderick & Calvert*, 131 Tex. 434, 114 S.W.2d 1166 (Tex. 1938); *Hudgins v. Krawetz*, 558 S.W.2d 131, 134 (Tex. Civ. App.–San Antonio 1977, no writ)).

[24] *Id.*

[25] *Id.*

[26] *Cowden*, 114 S.W.2d at 1169.

[27] *Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 840 (Tex. App.–Austin 2004, no pet.) (citing *Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist.*, 52 S.W.3d 495, 497-98 (Tex. App.–Dallas 2001, pet. denied); *Harris County Appraisal Dist. v. Se. Tex. Hous. Fin. Corp.*, 991 S.W.2d 18, 23 (Tex. App.–Amarillo 1998, no pet.)).

present right to compel legal title.[28]

## Analysis

In its first issue, the District contends the trial court erred in granting HIC's motion for summary judgment. The District argues that HIC does not meet the statutory requirements for the exemption because it acquired neither legal nor equitable title to Keystone prior to December 31, 2003. According to the District, HIC did not obtain title to the property until April 15, 2004, after the conditions of the Escrow Agreement were satisfied and the deed was delivered to HIC by recording.

With regard to its ownership of the property, HIC asserted the following in its motion for summary judgment:

> [HIC] acquired Keystone on December 29, 2003. A real property deed and a Blanket Conveyance, Bill of Sale and Assignment with regard to associated personal property were executed on that day. The Parties considered the transaction as complete except for the formality of recordation of the deed, which was delayed pending HUD approval of the transaction. [HIC] immediately undertook ownership of Keystone, securing insurance in December of 2003, and it began to collect rents for the following month.[29]

In support, HIC referenced the affidavit of Frank Mendez, then Manager and President of HIC. Mendez's affidavit stated, in relevant part, as follows:

> 12. [HIC] acquired Keystone on December 29, 2003. A true copy of its real property deed is attached hereto and incorporated by reference as Exhibit "G." A true copy of its Blanket Conveyance, Bill of Sale and Assignment with regard to personal property is attached hereto and incorporated by reference as Exhibit "H." To evidence their intention that the property was actually acquired by Plaintiff on December 29, 2003, the parties entered into a Certificate of Delivery on the same date. A true copy of the Certificate of

---

[28] *Id.*; *see Primrose Houston 7 Hous., L. P.*, 238 S.W.3d at 787; *Se. Tex.*, 991 S.W.2d at 23.

[29] "Plaintiff HIC Texas I, L.L.C.'s Amended Motion for Summary Judgment and Supporting Brief," p. 5 (footnotes and citations omitted).

Delivery is attached hereto and incorporated by reference as Exhibit "I." It was also the agreement and understanding of the parties that the aforementioned deed was not to be recorded until the parties had received formal approval of the transaction from the Department of Housing and Urban Development ("HUD"). Such approval was expected by the parties, but would likely take some time to receive. Pending approval of the transaction by HUD, the parties deposited the aforementioned deed and Blanket Conveyance with a title company pursuant to an Escrow Agreement. A true and correct copy of the Escrow Agreement is attached hereto and incorporated by reference as Exhibit "J." Pursuant to the terms of the parties' agreement, the escrow agent was to record the deed upon receipt of HUD approval. HUD did approve the transaction and the deed was released from escrow and recorded, as can be seen by the file markings thereon. (Exhibit "G").

13. The Keystone transaction closed on December 29, 2003, and [HIC] immediately undertook ownership. The property was insured by [HIC] beginning in December 2003. True copies of certificates of insurance covering the property for December 2003 are attached hereto and incorporated by reference as Exhibit "K." Rents for the following month were collected by [HIC], as shown by the true copies of checks and banking records attached hereto and incorporated by reference as Exhibit "L."

HIC argues that it was "entitled to its tax exemption as a result of its purchase of Keystone because it immediately was the equitable owner of the property while its deed was held in escrow, and because it held legal title relating back to December 29, 2003 following the release of the deed from escrow."[30] HIC relies upon *Cowden v. Broderick & Calvert, Inc.* for the proposition that when a title instrument is executed and placed in escrow, equitable title immediately vests in the grantee, even though legal title does not transfer from the grantor until the conditions of the escrow agreement are satisfied.[31] "[U]pon performance of the condition and delivery of the deed, the title acquired thereby

[30] APPELLEE'S BRIEF, p. 2.

[31] *Cowden*, 114 S.W.2d at 1169. Citing *Cowden*, HIC made the same argument to the trial court in its "Plaintiff's Response to Defendant's Cross Motion for Summary Judgment."

relates back to the time when the deed was placed in the custody of the escrow agent."[32] "[A]s between the parties to the escrow agreement and deed, effect will be given to their intention, evidenced by the instruments, that the deed shall upon performance of the condition take effect from the date of delivery in escrow."[33]

The District argues (and argued to the trial court) that HIC's reliance on *Cowden* is "misplaced" because in *Cowden*, the escrow agreement conditioned release of the instrument solely upon the grantee's actions.[34] In contrast, the Escrow Agreement in the present case gives HIC neither the power to satisfy the conditions of the escrow nor to unilaterally compel the release of the deed from escrow. According to the District, this case is governed by the holding in *Texas Turnpike Company v. Dallas County,*[35] in which the supreme court defined an equitable owner as one who has it "within his power to perform the conditions and compel the delivery of the conveyance transferring legal title."[36] The *Texas Turnpike* court held that the state was not the equitable owner of land for tax purposes because

> the right of the state, as grantee, to acquire the deeds and the legal title they convey is entirely dependent upon performance of conditions by the grantors. The state owns neither the legal nor the equitable title. It holds at

---

[32] *Id.*

[33] *Id.*

[34] *Id.* at 1167 (conditioning delivery of oil and gas lease on agreement between lessor and lessee that lessee would drill a well).

[35] *Tex. Turnpike Co. v. Dallas County*, 271 S.W.2d 400, 402 (Tex. 1954).

[36] *Id.*

9

most a right to become the owner of the legal title under certain conditions.[37]
The District argues that HIC was not the equitable owner of Keystone in 2003 because the Escrow Agreement conditions release of the deed from escrow upon the actions of third parties—the approval of state and federal housing authorities; thus, HIC did not have the right to compel delivery in that the conditions were not solely within its control.

The Escrow Agreement provides, in pertinent part:

> (a) The parties agree that when the Escrow Agent has received written confirmation from counsel for Seller and HIC that the transfer of physical assets for the transaction has been approved by the Department of Housing and Urban Development and the Texas Department of Housing and Community Affairs, Escrow Agent shall release the escrowed documents and record the Deed and the Mortgage with the appropriate filing office.

In response to the District's argument, HIC argues that *Texas Turnpike* is distinguishable because in the present case, (1) the grantor (seller) had no power to fulfill or defeat the condition of escrow; rather "[t]here was but a single condition of escrow, not the myriad complexities present in *Turnpike*," and (2) it was unnecessary to "speculate about the future" as in *Turnpike*, because the escrow condition had occurred and the deed had been delivered and recorded by the time suit was filed.

We are unpersuaded by HIC's arguments. The "single condition of escrow"— approval of the transaction by state and federal housing authorities—was not within HIC's power to perform. We agree with the District that HIC did not hold equitable title to Keystone in 2003 because it did not have the power to "perform the conditions and compel the delivery of the conveyance transferring legal title."[38] Pursuant to the terms of the

---

[37] *Id.*

[38] *See id.*

10

Escrow Agreement and the documents deposited with the escrow agent on December 29, 2003, HIC did not have "the present right to compel legal title" to Keystone.[39] Accordingly, we conclude that HIC did not hold either legal or equitable title to Keystone on or before December 31, 2003, and is therefore not entitled to an exemption under section 11.182(b) of the tax code.[40] We hold the trial court erred in granting HIC's motion for summary judgment; we sustain the District's first issue.[41]

## Conclusion

We reverse and render judgment in favor of the District and hold that HIC is not entitled to an *ad valorem* tax exemption for the 2003 tax year and subsequent years.

_____
LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and filed this
the 12th day of March, 2009.

---

[39] *See Primrose Houston 7 Hous., L.P.*, 238 S.W.3d at 787 (defining "equitable title" as " the present right to compel legal title"); *Signature Flight*, 140 S.W.3d at 840 (same); *Se. Tex.*, 991 S.W.2d at 23 (same); *see also TRQ Captain's Landing, L.P. v. Galveston Cent. Appraisal Dist.*, 212 S.W.3d 726, 729 (Tex. App.–Houston [1st Dist.] 2006, pet. filed) (holding that entity which acquired property through series of transactions and acquisitions held equitable title because it had present right to compel legal title, and as equitable owner, qualified for exemption under section 11.182(b) of the tax code).

[40] *See* TEX. TAX CODE ANN. § 11.182(b), (j).

[41] Because of our disposition of the District's first issue, we need not address its second issue. *See* TEX. R. APP. P. 47.1.

11