**A. Nelson McCARTER et al., Appellants,**

v.

**Leroy RANSOM, Appellee.**

No. 648.

Court of Civil Appeals of Texas,
Corpus Christi.

Oct. 28, 1971.

Rehearing Denied Nov. 24, 1971.

Daniel E. Hayes, Bay City, for appellants.

Bernard & Bernard, D. R. Bernard, Putnam Kaye Reiter, Houston, for appellee.

OPINION

BISSETT, Justice.

This is a venue case. Leroy Ransom filed suit in the District Court of Matagorda County, Texas, against A. Nelson McCarter and W. B. McCarter, Jr., for damages, actual and exemplary, for an alleged breach of an implied covenant contained in an oil, gas and mineral lease. The defendants, residents of Harris County, Texas, filed a plea of privilege to be sued in the county of their residence. The plaintiff controverted the plea of privilege and sought to maintain venue in Matagorda County, Texas, under Subdivisions 5 (Contract in writing), 7 (Fraud) and 14 (Lands), of Article 1995, Vernon's Ann.Civ.St.

The case was submitted to the trial judge, a jury having been waived, who, after hearing, overruled the plea of privilege on the basis of Subdivisions 5 and 7 of the venue statute. Appellants have appealed. We affirm.

■ Appellants timely filed a transcript in this Court but did not file a statement of facts within the time prescribed by our Rules of Civil Procedure. Therefore, since there is no statement of facts which this Court may consider, it must be presumed that the evidence presented to and heard by the trial court was sufficient to form a factual basis for overruling the plea of privilege. Piano v. Gulf Coast Investment Corporation, 429 S.W.2d 554 (Tex.Civ.App., Houston, 14th, 1968, wr. dism'd).

■ Appellants contend that the suit filed by appellee is not a contract action but is an action sounding in tort for breach of a fiduciary obligation. Appellee maintains that his suit is a contract action seeking recovery of actual and exemplary damages for the breach of an implied covenant contained in a written contract that is performable in Matagorda County, Texas, and for fraud that was perpetrated by appellants in said county. We agree with appellee.

On January 23, 1950, Mrs. Lucretia Ransom, as lessor, executed an oil, gas and mineral lease to a named lessee, covering a 73.81 acre tract of land in Matagorda County, Texas. Appellee succeeded to the interest of the original lessor under said lease. Appellants became the owner of the original lessee's working interest (as reduced by certain outstanding overriding royalties not involved in this appeal) insofar as the east 40 acres of the 73.81 acre tract is concerned, subject to certain depth limitations. A well identified as the Ransom No. 1 well, that was productive of hydrocarbons was brought in on the east 20 acres of the 73.81 acre tract. During the period April, 1964 through May, 1966, $\frac{1}{8}$th of the well's production was paid by appellants to appellee as a royalty. Appellants, by a written instrument dated June 1, 1966, recorded in Matagorda County, Texas, designated a gas unit comprising 120 acres of land that included the east 20 acres of the 73.81 acre tract. The remaining 100 acres were owned by third parties. The Ransom No. 1 well is located on appellee's 20 acres that was placed in the unit. The Arnold 20 acre tract, composing part of the unit and located northwest of appellee's land, has a well on it. This well was drilled, according to the pleadings of appellee, about two years before the date the gas unit was established. It was drilled to a depth of 9502 feet and produced oil from the sand found at 8032 to 8046 feet. It was plugged and abandoned before this suit was filed. The unit was effective as to "the present producing interval which appears on the log of the A. Nelson McCarter No. 1 Ransom well at the depth of 9307 feet to 9330 feet below the surface of the ground". The effect of the creation of gas unit was to reduce the royalty payable to appellee from the production from the Ransom No. 1 well from $\frac{1}{8}$th of $\frac{5}{8}$ths to $\frac{1}{48}$th of $\frac{5}{8}$ths.

Appellee alleged in his original petition that the Railroad Commission of Texas had not established well spacing rules and regulations for the field where the Ransom No. 1 well was located. He alleged that this

well and its production was regulated "under the Railroad Commission of Texas Statewide Rule 37 which at all times material hereto has required one well to 40 acres whether productive of oil, gas or both". There is a further allegation that Railroad Commission Special Order 3–375 provides "that whether a well be productive of oil or gas, the basic unit shall be twenty (20) acres". In particular, appellee alleges:

"* * * That the law and lessee's agreement with the lessor impose a good faith duty on lessee when in its fiduciary capacity lessee attempts a unit designation. That further, lessee's proposed unit designation is measured by certain standards under express provisions of the oil, gas and mineral lease on the Ransom 73.81 acre tract. That lessee has the duty to include in a unit designation only that acreage which is necessary or advisable to be included so as properly to develop and operate the Ransom 73.81 acre tract in compliance with the spacing rules of the Railroad Commission of Texas, or other lawful authority, or when to do so would promote the conservation of oil and gas from said Ransom 73.81 acre tract. That the gerrymandered unit which would have resulted from defendant's attempted unit designation had it been effective would have constituted a clear breach of the duty of lessee under the terms of the oil, gas and mineral lease on the Ransom 73.81 acre tract."

The transcript contains a copy of the aforesaid oil, gas and mineral lease, which is an instrument in writing that was duly signed by both lessor and lessee. This oil, gas and mineral lease covered the 73.81 acres, above mentioned, that is situated in Matagorda County, Texas. The lease contains a provision whereby the lessee, at its option, has the right to pool the acreage covered by the lease, or any portion thereof, as to oil and gas, or either of them, with other land, lease or leases in the immediate vicinity thereof to the extent of 320 acres

for a gas unit and 40 acres for an oil unit, plus a 10% tolerance, in order to comply with the spacing rules of lawful regulatory authority, or when, in lessee's judgment, it was necessary or advisable to do so in order to properly develop and operate the leased premises. In the event a pooled unit was established, it was provided that the lessee shall file for record in the appropriate records in the county in which the leased premises are situated an instrument describing and designating the pooled acreage as a pooled unit. Such an instrument was filed by appellant for record in Matagorda County, Texas. It is established that appellants accepted such lease, were operating under its terms, and designated the gas unit by virtue of a provision contained in the lease itself.

Subdivision 5 of Article 1995, V.A.C.S., provides:

"5. Contract in writing.—If a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile."

It was stated in McKenzie Construction Company v. Pittman, 288 S.W.2d 527, 530 (Tex.Civ.App., San Antonio, 1956, wr. dism'd.):

"This brings us to a consideration of Subdivision 5 of Article 1995, supra. It is plain from reading this subdivision that the contract must expressly provide that the obligation which is the basis of the suit is to be performed in the county of the suit, but such subdivision does not provide that the obligation must be expressly provided for in the written contract. It is sufficient if such obligation is impliedly provided for within the four corners of the contract."

In Petroleum Producers Co. v. Steffens, 139 Tex. 257, 162 S.W.2d 698 (Tex.Com. App., opinion adopted, 1942), the suit was

for failure to drill offset wells. There was no express provision requiring the drilling of such wells, but they were impliedly provided for in the oil lease. The tract of land was situated in Jones County and the Court concluded that venue, as prescribed in Subdivision 5 of the venue statute, lay in Jones County. The court said:

"The terms of the lease instrument set out above—nothing to the contrary appearing in the instrument—imply an obligation on the part of the lessee to drill offset wells and development wells. (Citing authorities.) The place for performance of this implied obligation is expressly named in the lease instrument, towit, the parcel of land in Jones County in respect to which the parties to the lease were contracting."

■■■ The doctrine of implied covenants applies with respect to oil, gas and mineral leases. Implied obligations are as much a part of the lease and are just as binding as though they were expressed. Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684 (1959); Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039 (1928). Implied covenants are justified on the ground of necessity and fair dealing. W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27 (1929).

The pleadings in this case, when fairly construed in accordance with the true intent of our Rules of Civil Procedure, constitute this suit an action for damages for breach of appellants' implied covenant to do what a reasonable prudent operator would do under the same or similar circumstances. Clifton v. Koontz, supra; Texas Pacific Coal and Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 60 A.L.R. 936 (1928); 42 Tex.Jur.2d Oil and Gas, § 195, pp. 409–414.

It is clear from the language used in Subdivision 5 of Article 1995, V.A.C.S., aside from the fact that the pleadings disclose that the suit is upon an implied obligation contained in the lease, there is only one fact which need be shown in order to cast venue in the county where the suit is brought. This single fact is to the effect that the defendant has contracted in writing to perform the obligation in the county or some definite place therein named in the writing. The place for the performance of this implied obligation is expressly named in the lease instrument, to wit, the 73.81 acre tract of land in Matagorda County in respect to which the original lessor and lessee were contracting. Proof of the existence of a cause of action is not required. Petroleum Producers Co. v. Steffens, supra; Farmers' Seed & Gin Co. v. Brooks, 125 Tex. 234, 81 S.W.2d 675 (Tex. Com.App., opinion adopted, 1935).

We conclude that the pleadings, the admissions and the evidence introduced (presumed to be sufficient because of the absence of a statement of facts) show that venue, as prescribed in Subdivision 5 of Article 1995, V.A.C.S., lies in Matagorda County and that the trial court correctly overruled appellants' plea of privilege. Appellants' first and second points of error are overruled.

Appellee also asserts that appellants have breached their fiduciary duty to exercise good faith towards him in exercising the power granted under the pooling premises of the lease. He alleges that the reservoir from which the Ransom No. 1 well was producing did not include any appreciable area of the Arnold acreage. He concludes that the attempt to create such a gas unit under the conditions existing and in the light of the scientific knowledge available to appellants at the time the gas unit was designated constituted a fraud on him as well as breach of duty under the terms of the lease. He contends that the effect of this fraud was to dilute the royalties due him under the lease. As a result, according to appellee's pleadings, appellants benefitted at the expense of appellee.

In Expando Production Company v. Marshall, 407 S.W.2d 254 (Tex.Civ.App., Ft. Worth, 1966, wr. ref. n.r.e.), the Court said:

"There is no doubt but what there is a fiduciary obligation on the part of the lessee to exercise the utmost good faith toward the lessor in exercising the power granted under a pooling provision. Unitization cases in practically all jurisdictions so hold. Where, like here, the pooling is accomplished after production is obtained and after the primary term has expired (and where there is no clear indication contained in the pooling clause itself with respect to the exact timing of such unitization), we are of the opinion that the good faith exercised by the lessee becomes of paramount importance. * * *"

For other authorities holding that the lessee, in creating pooled units under a pooling provision in an oil, gas and mineral lease, is subject to the implied obligation that he act fairly, in good faith and with due regard for the interest of the lessor, see Banks v. Mecom, 410 S.W.2d 300 (Tex.Civ. App., Eastland, 1966, wr. ref. n.r.e.); Tiller v. Fields, 301 S.W.2d 185 (Tex.Civ. App., Texarkana, 1957, n.w.h.).

■ The cause of action asserted and proved by appellee could only have accrued from acts committed by appellants in Matagorda County. The power to pool is found in a written contract that affects lands in that county. The lands pooled were in that county. The instrument creating and establishing the pooled unit is recorded in that county. The creation of the unit is challenged as being a fraud on appellee that was perpetrated in Matagorda County. In the absence of a statement of facts it must be presumed that sufficient evidence was introduced to support the judgment of the trial court. Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683 (1951); Sanchez v. Carey, 409 S.W.2d 458 (Tex.Civ.App., Corpus Christi, 1966, n.w.h.). We also hold that venue under Subdivision 7, Article 1995, V.A.C.S., lies in Matagorda County. Appellants' third point of error is overruled.

The judgment of the trial court is affirmed.

SHARPE, J., not participating.