**Louise Burnett PRITCHETT, Appellant,**

v.

**FOREST OIL CORPORATION, Appellee.**

**No. 6445.**

Court of Civil Appeals of Texas, El Paso.

March 10, 1976.

Rehearing Denied April 7, 1976.

McCulloch, Ray, Trotti, Hemphill & Meadows, Ross H. Hemphill, Clayton E. Devin, Dallas, for appellant.

Stubbeman, McRae, Sealy, Laughlin & Browder, W. B. Browder, Jr., David K. Brooks, Midland, for appellee.

## OPINION

WARD, Justice.

■ This appeal is from the action taken by the trial Court at the close of the plaintiff's testimony in removing the case from the jury and entering a judgment for the defendant. The plaintiff-Appellant, Louise Burnett Pritchett, owned 200 acres of overriding royalty interest which had been voluntarily pooled with other interests into the W. C. Tyrell Unit with the Appellee, Forest Oil Corporation, as the unit operator. During the drilling of the first well, the plaintiff desired to hedge on her investment and sold 50 acres of her royalty interest to one O'Brien who immediately conveyed the royalty to the Appellee. Soon thereafter, a very profitable gas well was completed. The plaintiff sued for rescission of the sale or in the alternative for damages on the theory that the defendant occupied a strict fiduciary relationship with the plaintiff, that a misrepresentation by omission in failing to reveal favorable drilling information had occurred just prior to the sale, and that the defendant had thereby wrongfully obtained a secret profit in violation of the high fiduciary duty which it owed to plaintiff. We affirm the judgment of the trial Court and hold that the strict fiduciary standard is not applicable to this transaction between the holder of an overriding royalty interest of a voluntarily pooled unit and the unit operator.

The Appellant was not a party to the original oil and gas lease but had purchased some 200 acres of royalty interest after its execution. This royalty interest was subject to a pooling power granted in the original lease. The lease was to Gulf Oil Co. and was put into the W. C. Tyrell Unit in 1970 with the Appellee, Forest Oil Corporation, acting as the unit operator.

After the first well on the unit was begun in late 1970, the Appellant, through her son, followed the progress of the drilling by repeated telephone calls to the Appellee's employees. The son was a professional geophysicist employed by Atlantic Richfield Company. The Appellant relied exclusively on his advice and he, in turn, conducted all of the dealings with the Appellee's employees. From the beginning, the son had advised the Appellee's employees that he never wanted any information that was not being made public, but he wanted all information that they felt was permissible for them to give him. By March 1971, the Appellant had determined to sell some of her royalty and offered to sell 50 acres of it to Appellee at $1,000.00 an acre. One of Appellee's employees, in turn, stated there was no interest at that price but that Forest would buy it at $300.00 an acre. These negotiations went no further and were not resumed. By May 1971, the well had reached the contemplated pay formation and the son sought to determine the facts concerning the porosity of the formation at the point where the well entered it. The Appellee's employee, Mr. Dodson, answered Mr. Pritchett's questions but did not furnish some information from the drilling reports which would have been valuable information in determining porosities. Specifically, he did not tell Mr. Pritchett the amount of fluid loss experienced in the Ehlenberger formation which, according to the Appellant's theory, would have accurately reflected the well's potential and its value. This would have indicated a good well to the son and the Appellant would not have sold any interest if these facts had been known. The amount of the fluid loss was not made public by the Appellee. On the basis of the investigation described and without receiving any further information concerning the well, 50 acres of the royalty was sold on May 25, 1971, to a broker named George H. O'Brien, Jr. at $700.00 an acre. Shortly before the final completion of the well, George O'Brien, in turn, transferred this acreage to the Appellee. The son testified that he relied on the information that he had received and he believed that it was complete.

The Appellant's principal contention, as advanced by her points, is that the unit operator became a trustee and owed a fiduciary obligation to the royalty interest owner and as such is prohibited from acquiring any rights antagonistic to the Appellant's

interest; that public policy requires that all temptation be removed from the trustee and that the trustee may not acquire any personal advantage from the subject matter of the trust and that in all dealings with the trust property full and complete disclosure must be made to the trust beneficiary. The Appellant relies on those cases which recognize that certain fiduciary obligations exist where the lessee pools under the contractual unitization clause in the lease. *McCarter v. Ransom,* 473 S.W.2d 235 (Tex. Civ.App.—Corpus Christi 1971, no writ); *Expando Production Co. v. Marshall,* 407 S.W.2d 254 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n. r. e.); *Banks v. Mecom,* 410 S.W.2d 300 (Tex.Civ.App.—Eastland 1966, writ ref'd n. r. e.); *Tiller v. Fields,* 301 S.W.2d 185 (Tex.Civ.App.—Tex.1957, no writ). The controversies arise where the lessor's royalty could be diluted because of the lessee's manner of unit designation. The power granted under the pooling agreement has been examined and two theories have been advanced as a basis to control the lessee. In the *McCarter* case, an implied covenant was recognized that the unit operator must do what a reasonable prudent operator would do under the same or similar circumstances and in all the cited cases a fiduciary duty is imposed which requires the lessee to exercise the utmost good faith toward the lessor and royalty holders in using the power granted under the pooling provisions of the lease. Under the latter theory, if lessee, in its unit designation, dilutes the royalties due lessor and where under the facts a fraud is practiced on the lessor, then relief is available.

These cases require fairness in the exercise of the pooling power, but none go to the extent of recognizing a conventional trust relationship. Neither do they ever state that a fiduciary duty is owed by a unit operator regarding the giving of drilling information to a royalty owner who has no interest in the cost of production.

In arguing for an application of the trust principles to the present facts, Appellant cites *Young v. West Edmund Hunton Lime Unit,* 275 P.2d 304 (Okl.Sup.1954), where the unit organization and its operator were held to occupy a position similar to that of a trustee for the benefit of all those interested in the oil production, either as lessees or royalty owners. There the Court adopted the general rule of Trust Law that the trustee is normally forbidden to buy trust property; that while the unit operator might purchase oil and gas for its own use and benefit; it had to act with the highest fidelity toward the royalty owner. The case was dealing with a forced pooling statute where the unit operator was permitted, without any control, to supervise, manage, and conduct the development and operation of the unit for production of oil and gas, that it knew that a price of $3.00 a barrel was fully available for all of the production and yet, it sold part of the production to itself at a price of $2.65 a barrel.

To apply that argument to the present case would be without reason. It is one thing where an operator is designated to sell production where the highest price obtained directly benefits the royalty owner who is without any power of control. But, it is an entirely different matter when the lessor or royalty interest owner, who is not charged with the cost of production, attempts to inquire of the producer information entirely foreign to any legitimate interest. The inquiry as to the information in this case concerned the Appellant's desire to gamble or hedge with her own properties in case the well was not a success. In this area, no fiduciary or confidential relationship can be said to exist as a matter of law between the unit operator and the holder of a royalty interest in the unit. *Sunac Petroleum Corporation v. Parkes,* 416 S.W.2d 798 at 804 (Tex.1967). The first point is overruled.

Insofar as the second point can be said to advance the proposition that as a matter of law there was a breach of the confidential or fiduciary relationship, it is also overruled.

■ Under the first two points the Appellant argues that there are fact issues present, both as to the existence of the fiduciary or confidential relationship and its

subsequent breach, and that the directed verdict was improper. No family or former business relationship or joint venture are involved. The mere fact that the Appellant subjectively trusted the Appellee or its agents is not enough. *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962). In addition, the Appellant's son repeatedly testified that he never sought any confidential information from the Appellee. Any confidential relationship was not in the case.

While the Appellant pleaded common law fraud, no complaint is made on appeal regarding a failure to submit this theory. There is no assertion that any false statement was ever made to the Appellant or to her son.

The evidence that Forest Oil Corporation acquired the Appellant's royalty interest through O'Brien does not establish the fiduciary or confidential relationship which is necessary to the Appellant's cause of action.

All of the Appellant's points have been considered and they are overruled. The judgment of the trial Court is affirmed.